SIZER and wife and others *vs.* DEVEREUX.

When premises are described in a deed as running "*to a road, and along a road,*" the grant includes the road, to the center. But if the boundary is to the *side* of the road, and *along the side of the road,* the road is excluded, by the terms of the conveyance.

Where a deed gives the boundaries of the land conveyed, by courses and distances, *without* mentioning a street by which the same is bounded, on one side, but it turns out in the evidence upon a trial, that the courses and distances given in the deed do, *in fact,* carry the boundary *to* the street, and *along* that street, it is in law the same as though the boundary were described as running *to* the street and *along* the same; and the grant will extend to the center of the street.

Where a deed, in the description of the premises conveyed, refers to a map, filed in the county clerk's office, and the map, on inspection, exhibits the premises conveyed, as lying *adjacent to a street,* such map is, by legal intendment, a description of the premises as *bounded on the street;* and demands a construction precisely the same as though the description were so written out in words.

The grantee, in such a case, will take to the center of the street; and this, notwithstanding the distance given in the deed would only carry the grant to the *side* of the street, instead of extending it to the center

THIS action was brought to recover an undivided fourteenth part of so much of the land covered by the Devereux block in the city of Utica, as lies within the original lines of Hotel-street. On the trial, at the Oneida circuit, in October, 1851, before Justice GRIDLEY, the defendant's counsel, at the close of the testimony on both sides, moved for a nonsuit. The justice granted it; remarking, among other things, that as it appeared by the map referred to in the description of the lands conveyed by the original deeds of 94 and 95, that those lots lay upon the

easterly line of Hotel-street, a conveyance of the lots by the description and reference contained in the deed, gave to the grantee the land lying between the lots and the middle of the street. The plaintiffs excepted, and on a bill of exceptions, moved for a new trial.

*Wm. Tracy,* for the plaintiffs.

*H. Denio* and *F. Kernan,* for the defendant.

*By the Court,* GRIDLEY, J. Mrs. Sizer, one of the plaintiffs, is one of the heirs at law of John Mappa, deceased; and she seeks to recover in this action, for her share as such, the one-fourteenth part of a piece of land covered by a part of the building known as the Devereux block; and being a part of Hotel-street, in the city of Utica. The defendant owns the premises situated on both sides of the street opposite the piece of land in question. The plaintiff, however, insists that her ancestor never parted with the legal title to the site of the street; and that she, as his heir, is entitled to recover in this action her interest in it. Several questions were discussed on the argument, which we do not propose to examine. The case, we think, may be disposed of, without reference to them.

Hotel-street, in the city of Utica, was laid out as a public highway, and recorded in the office of the town clerk of the town of Whitestown, on the sixth day of April, 1801. Previous to the laying out of this highway, the proprietors of the tract had procured a survey to be made, and a map to be constructed, by Calvin Guiteau, and filed with the clerk of the county, in which a space was laid off, for Hotel-street; and lots were laid out upon it; from which map sales were made to purchasers, and the lots were described in the deeds by reference to that map and survey. The premises in question consisted of parts of village lots 94 and 95, as designated on the map; and were respectively described as follows, in two deeds executed by the original proprietors, which title has descended through several mesne conveyances to the defendant, as was admitted on the

trial. The deed conveying lot 94, bears date on the twenty-eighth day of April, 1803, in which the premises conveyed are described in the following manner: " All that certain piece or parcel of land situate, lying and being in the village of Utica, county of Oneida, and state of New-York, known and distinguished by a survey made thereof by Calvin Guiteau, in the year one thousand seven hundred and ninety-eight, and on a map of said land filed in the clerk's office of the county, by lot 94. Beginning at the S. E. corner of No. 93, and runs from thence north fifty-three degrees and fourteen minutes, W. fifty-seven feet. Thence S. 36 degrees 15 minutes, W. sixty feet. Thence south fifty-three degrees fifteen seconds, East twenty-nine feet, to the *Genesee road*. Thence N. sixty degrees East along the side of the same, to the place of beginning." Lot No. 95 was conveyed by deed, bearing date September 24th, 1802, in which the premises were described as " All that certain lot or piece of ground situated in the village of Utica, and county of Oneida, known by a survey made thereof by Calvin Guiteau, in the year one thousand seven hundred and ninety-eight, by lot No. 95. Beginning at the S. E. corner of 94, runs thence north 53 degrees 45 minutes W. twenty-nine feet; thence S. thirty-six degrees 15 minutes west, sixty-four feet, *to the Genesee road*; thence along the side of the same N. sixty degrees E. to the place of beginning." It will be observed that though *Genesee-street is named in these deeds*, and the boundary of the lands described is stated to run *along the side of the Genesee road*, yet Hotel-street is not named in either of them; but the boundary of the lots is described as running a certain course for a certain distance, referring to the survey and map on file; which, on inspection, show these lots bounded on the space laid out as Hotel-street; which descriptions are, by the settled constructions, to be read as though the boundary had been described as running " *to Hotel-street*, and *along the said street*," on the given courses, and for the given distances. This is a significant distinction, and as we shall see by and by, is quite decisive of the rights of the parties in this cause.

We are to inquire what is the legal construction of deeds

which describe the boundaries, adjacent to Hotel-street, by courses and distances merely. Does such a description convey the land to the *center* of Hotel-street, or does it convey the land only up to the *eastern side of it?* We believe the uniform construction of words, such as are employed in this description, is, that the conveyance extends to the center of the highway. Such words as are used to describe the premises on the side next Hotel-street, not only have never been construed to limit the grant to the side of the street, but have been uniformly regarded by the courts as a conveyance to the center of the street. The general rule on this subject is laid down in *Kent's Commentaries,* (3 *vol.* 432,) in these words: "The law with respect to public highways and to fresh water rivers, is the same. The owners of the land on each side *go to the center of the road."* The language of the court in *Jackson* v. *Hathaway,* (15 *John.* 454,) and the same is re-affirmed in the court for the correction of errors, in *Child* v. *Starr,* (4 *Hill,* 369,) is as follows: "Where a farm is bounded *along a highway,* or *upon a highway,* or is described as running *to a highway,* there is reason to intend that the parties meant *the middle of the highway."* Ch. Kent says, (*supra,*) "The idea of an intention in a grantor to withhold his interest in a road to the middle of it, after parting with all his right to the adjoining land, *is never to be presumed;* it would be contrary to universal practice." Nevertheless a grant *may be* so worded as to exclude the highway from the terms of the conveyance. And it was held in *Child* v. *Starr,* (4 *Hill,* 369, and 5 *Denio,* 600,) that where land is described as running to *the side* of a road, or to *the bank of a river,* and then *along the side* of the road or bank, the road or bank *is excluded by the terms of the grant.* We see, therefore, that when premises are described as running "*to a road, and along a road,"* the grant includes the road to the center; whereas, if the boundary were to *the side* of the road, and *along the side of the road, the road is excluded,* by the terms of the conveyance. The description of the lots in question, on the side of *Genesee-street,* running *to* the side of the street, and *along the side of the street,* conveys no part of that street. That was

a turnpike road; and the proprietors did not own it, and had no right to convey it; and hence the significant phraseology of the deed. The fact was not so, however, with respect to Hotel-street. The proprietors owned the soil of that street, and they adopt a description which by the established construction of the words carries the grantee to the center of that street. The boundary on the side of Hotel-street is equivalent to a description *in words* of premises running " *to Hotel-street and along Hotel-street.*" It is fixed by courses and distances, without naming Hotel-street at all. And in just such a case as this, the very point was decided by the supreme court of Connecticut, in the case of *Champlin* v. *Pendleton*, (13 *Conn. Rep.* 23, 25, 27.) The question was, whether a line *not described* as running on a street, but which was proved on the trial to run on a street, *in fact*, was to be construed as carrying the grant to the middle of such street, and the court held that it should be so construed. The court, after saying that the general principle was, that a description which carried the boundary " *to* a street, and *along* a street," embraced the street, to the center of it, proceeded to lay down the doctrine that where it turns out in the evidence that the courses and distances given in a deed do, *in fact*, carry the boundary *to* a street, and *along* that street, it is the same in *law* as though it were expressed in words. Applying that principle to the case at bar, we see that the courses and distances given in the deeds *do, in fact*, carry the boundary *to* Hotel-street, and *along* Hotel-street. It follows therefore that it is in law the same as though the boundary were described to run " to Hotel-street, and along Hotel-street," in words. The consequence is, that by the settled construction of the words and phrases used in describing the premises adjacent to Hotel-street, the grant is carried to the center of that street.

There is another view of this question that leads to the same conclusion, and is equally conclusive in favor of the defendant. The description refers to the map made by Calvin Guiteau and on file in the office of the clerk of the county. That map is in evidence, and exhibits the premises in question as lying adjacent to Hotel-street. This map therefore is, by legal in-

tendment, a description of the premises as *bounded on Hotel-street*, and demands a construction precisely the same as though the description was so written out in words. This principle is stated and illustrated in the case of *Varick* v. *Smith*, (9 *Paige*, 550, 553,) where the premises, which consisted of two separate pieces of land, were described, the one as "lot No. 7 laid down and delineated on a map filed &c. as *adjacent and extending to the Oswego river;*" and the other as "blocks No. 78, 90, 99, 103 of the village of West Oswego as the same have been surveyed and designated on the map of the said village filed in the office of the secretary of state. The vice chancellor, in his opinion, in discussing this point, uses the following language. "An exemplified copy of the said map has been given in evidence, which exhibits these blocks as adjoining the river, which I consider as equivalent to a description that in terms bounds them on the river." This position of the vice chancellor was denied by the counsel of the defendant, on the argument of the appeal. But the chancellor affirmed the doctrine asserted by the vice chancellor, and said, "The patent for No. 7 refers for its location to the map of the township of Hannibal, filed in the surveyor general's office, and upon that map the lot is bounded generally on the Oswego or Onondaga rivers. *This is the same, therefore, as if the patent had in terms bounded the land granted by the river, without restriction or limitation,* which would legally have carried the grant to the center of the stream." "The patent for the blocks in West Oswego also refers in the same manner, to a map on file in the office of the secretary of state, which map bounds these blocks on the river, without restriction." This case is therefore a direct and conclusive authority in favor of the principle on which the question in this case turns.

There is only one objection to this result, which remains to be considered; and that is the fact that the distance given in the deeds would only carry the grant to the side of Hotel-street, instead of carrying it to the center. This objection, it will be seen, is founded on the idea that whenever it appears by the express words of the grant, or by a map which exhibits

the premises as running to the road, the road itself is excluded. This we have already seen to be an error. The road or street is in the nature of a monument, and overrides and controls the courses and distances; and by a fixed and settled construction premises described as running *to a road* are carried by the conveyance itself to the center of the highway. The case of *Herring* v. *Fisher*, (1 *Sandf*. 344, 348,) illustrates and answers the objection founded on both these grounds. The deed in that case stated the premises as *beginning at a certain road and running along the road*. Oakley, Ch. J., after laying down the general rule to which we have adverted, proceeds to remark that " if the deed of lot No. 9 had in express terms declared the boundary to begin *at the side of the road*, still by virtue of the following words " running along the road," the line must be held to run along the center of the road. The plaintiff, however, contends that there are two circumstances that tend to indicate an intention to exclude the road. It refers to the map; and by the map the road is laid down colored red, and the land appears to run up *to* the road and not to the center of it; and secondly, that the distance given of the line of the premises running *to* the road, would *exclude the road*. But as to the latter circumstance it is of little moment. The distances can never be safely relied on as affording the means of correctly locating the land; and they are resorted to only when other means fail, as courses and monuments. But the propriety of this rule is strongly illustrated in the present instance. Two of the lines of lot No. 9 are incorrectly given." " As to the map we do not consider it can affect the construction of the deed. It is not usual, when a map is made of a farm bounded by a road, to include any part of the road within the lines. The principal object of the map is to show the extent of the beneficial ownership of the proprietor, and of his right to exclusive occupancy. When a map has a road forming one of the sides of a farm, in judgment of law it includes one-half the road, though the line marked on the map would seem to exclude it. A map in this respect is like a deed." See also the same principle put forth in *Hammond* v. *McLachlan*, (1 *Sandf*. 323.) This

seems to dispose of the objections we have been considering. There are other questions—as, whether ejectment, being a possessory action, will lie for part of a street, and also the questions arising on the dedication of the road to the public, and the implied exclusion of all right of the plaintiff to take possession of it if he should recover it. But we do not deem it necessary to discuss these questions.

[ONEIDA GENERAL TERM, January 3, 1853. *Gridley, Pratt, W. F. Allen* and *Hubbard,* Justices.]