MARY S. VAN WINKLE, Respondent, *v.* ELIZABETH M. VAN WINKLE, Respondent, and GRACE B. RUGGLES et al., Appellants, Impleaded with Others.

1. HIGHWAYS — PRESUMPTION AS TO OWNERSHIP OF FEE OF ROADBED. While it is the general rule that the fee of the soil of a highway is presumed to belong to the adjoining owners, and that a person holding land bounded by a highway is *prima facie* the owner to the center of the highway subject to the easement of the public to the right of way, such presumption may be rebutted by an express provision in the deed to such owner to the effect that the fee to the highway was not intended to be conveyed, or by the use of such words as necessarily exclude the highway from the description of the premises conveyed; but where there is ambiguity with reference to the description or to the commencing point, or where there is doubt with reference to the intent of the grantor, the presumption that the fee was intended to pass will prevail; for in such case the construction must be that most favorable to the grantee.

2. PARTITION — EFFECT OF RECITALS IN DEEDS PARTITIONING LANDS UNDER AGREEMENT UPON QUESTION WHETHER TITLE TO CENTER OF HIGHWAY WAS CONVEYED OR NOT. Where land sought to be partitioned in an action in the Supreme Court was formerly the bed of a road, or public highway, running through lands formerly owned by a common ancestor of parties to the action, claiming under certain ancient deeds, and which highway was discontinued by acts of the legislature long after the execution of such deeds, so that the fee to the roadbed reverted to the then owners of the adjoining lands unless the title thereto had been reserved by such deeds, and it appears from recitals therein that such deeds were executed by the heirs of the common ancestor under an agreement to partition all of the real estate of such ancestor among themselves, and that such partition had reference to all the lands of such ancestor bounded upon such public highway, it must be held that such heirs intended that such partition should have the same force and effect as if made in court; and that they designed to divide among themselves all of the lands belonging to their ancestor, including the fee to the road-bed in question, where the latter was not reserved by express provisions in such deeds, or by use of words necessarily excluding it from the description of the lands conveyed.

3. DEEDS — BOUNDARIES AND DESCRIPTION OF LAND ABUTTING ON A STREET OR HIGHWAY — WHEN TITLE TO CENTER OF ROADBED OF STREET, OR HIGHWAY, IS CONVEYED. Where a line runs to a stake or to a mark upon a fence or a tree upon the side of a highway, and thence along the highway, the stake, mark or tree will be deemed to indicate the place of the line and not the end thereof, by reason of the

difficulty of maintaining a visible object marking the corner in the road-bed of a highway, thus vesting the title to' the center of the street, or highway, in the grantee.

4. SAME. Where a. deed gives the boundaries of land conveyed by courses and distances, without mentioning a street by which the same is bounded on one·side, and it appears that the distance given does in fact carry the boundary to the street and along it, it is the same as though the boundary were described as running to the street and along the same, thus extending the title to the center.

*Van Winkle* v. *Van Winkle*, 95 App. Div. 605, affirmed.

(Argued February 15, 1906; decided March 6, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 9, 1905, affirming a.judgment entered upon a decision of the court at Special Term in an action to partition and remove a cloud on the title of certain real property, and also affirming an interlocutory judgment therein and an order denying a motion for a new trial.

The facts, so far as material, are stated in the opinion.

*Peter A. Hendrick* and *James A. Deering* for Grace B. Ruggles et al., appellants. The conveyances made upon the partition of 1802 to Ann Apthorp and Charlotte Vanden-heuvel, and 'by the Apthorp heirs in 1799 to William Jauncey, and the subsequent conveyances made by Ann Apthorp and the heirs of Charlotte Vandenheuvel did not include the soil of the cross road or "Apthorp's Lane." (*English* v. *Brennan*, 60 N. Y. 609; *White's Bank* v. *Nichols*, 64 N. Y. 65; *K. C. Ins. Co.* v. *Stevens*, 87 N. Y. 287; 101 N. Y. 411; *Tag* v. *Keteltas*, 92 N. Y. 625; *Dexter* v. *R. & O. Mills*, 39 N. Y. S. R. 933; 133 N. Y. 684; *Holloway* v. *Delano*, 139 N. Y. 390; *Patten* v. *N. Y. El. R. R. Co.*, 3 Abb. [N. C.] 306; *Lee* v. *Lee*, 27 Hun, 1; *Morison* v. *N. Y. El. R. R. Co.*, 74 Hun, 398; *Matter of St. Nicholas Terrace*, 76 Hun, 209; 143 N. Y. 621; *Deering* v. *Reilly*, 38 App. Div. 164; 167 N. Y. 184.) The partition deeds of November 30, 1802, to Charlotte Vandenheuvel and Ann Apthorp, and the deed to. William Jauncey of August 1, 1799, established by

estoppel the fact that all the heirs of Chas. W. Apthorp were
then the owners of all the land of which he died seized, which
included the premises in question. (Hopkins on Real Prop.
408, 435 ; *Curver* v. *Jackson,* 4 Pet. 1 ; *Usina* v. *Welder,* 58 Ga.
178 ; *Lucas* v. *Beebe,* 88 Ill. 427 ; *Redwood* v. *Tower,* 28 Minn.
45 ; *Green's Appeal,* 97 Penn. St. 342 ; *School Dist.* v. *Stone,*
106 U. S. 183 ; *Bowman* v. *Taylor,* 2 Ad. & El. 278 ; *Jack-
son* v. *Parkhurst,* 9 Wend. 209 ; *Torrey* v. *Bank of Orleans,*
9 Paige, 649 ; 7 Hill, 260 ; *Roosevelt* v. *Smith,* 17 Misc. Rep.
326 ; *Inskeep* v. *Shields,* 4 Har. [Del.] 345 ; *Morris* v.
*Wheat,* 8 App. Cas. [D. C.] 379 ; *Pinckard* v. *Milmine,* 76
Ill. 453.) The partition deeds of November 30, 1802, under
which the plaintiff's title is derived, taken in connection with
the other partition deeds then made, and the many instru-
ments, declarations, etc., by Hugh Williamson, and the sub-
sequent chain of title to the present owners in the tract,
clearly establish as a fact that between the date of the sheriff's
deed to Hugh Williamson and the date of the partition deeds
all the children of Charles W. Apthorp became reinvested
with the title. (L. 1896, ch. 547 ; *Rawson* v. *Lampman,* 5
N. Y. 456 ; *Woerz* v. *Rademacher,* 120 N. Y. 62 ; *Verdin* v.
*Slocum,* 71 N. Y. 347 ; *Wright* v. *Douglass,* 7 N. Y. 564 ;
*Urame* v. *Coates,* 109 Mass. 581 ; *Hutchins* v. *Van Vechten,*
140 N. Y. 115 ; *Ellwood* v. *Northrup,* 106 N. Y. 172 ;
*Wadd* v. *Hazelton,* 137 N. Y. 215 ; *Van Cott* v. *Prentice,*
104 N. Y. 45 ; *Baylor* v. *Tillebach,* 49 S. W. Rep. 720.)
The title of the appellants as heirs at law of the children of
Chas. W. Apthorp is not affected by the finding of the jury.
(*Pinckard* v. *Milmine,* 76 Ill. 453 ; Herman on Estoppel,
§§ 576, 610 ; *Patterson* v. *U. S.,* 2 Wheat. [U. S.] 221 ;
*McCarthy* v. *Hudson,* 24 Wend. 291 ; *Loew* v. *Stocker,* 61
Penn. St. 347 ; *Kansas R. Co.* v. *Pointer,* 14 Kan. 37 ;
*M'Lean* v. *Copper,* 3 Call [Va.], 367 ; *Goosely* v. *Holmes,*
3 Call [Va.], 424 ; *Clay* v. *Ransome,* 1 Munf. [Va.] 454 ;
*Tunnell* v. *Watson,* 2 Munf. [Va.] 283 ; *Geddy* v. *Butler,* 3
Munf. [Va.] 345 ; *Robison* v. *Brock,* 1 Hen. & M. [Va.]
213.)

*Edward R. Vollmer* for Julia F. Hamilton et al., appellants. Upon November 30, 1802, when the partition deeds were made among the heirs of Charles W. Apthorp, all the persons named in the partition deeds then executed who were the heirs at law of Charles Ward Apthorp were owners of the premises in question. (3 Washb. on Real Prop. ch. 2, § 6; 1 Greenl. on Ev. § 23; *Carver* v. *Jackson*, 4 Pet. 1; *Jackson* v. *Parkhurst*, 9 Wend. 209; *Jacques* v. *Short*, 20 Barb. 269; *Gilbert* v. *Peteler*, 38 Barb. 488; *Jackson* v. *Neeley*, 10 Johns. 374; *Jackson* v. *Thompson*, 6 Cow. 178; *Hardenburgh* v. *Lakin*, 47 N. Y. 111; *Bissing* v. *Smith*, 85 Hun, 564; *Crowell* v. *Beverly*, 134 Mass. 98; *Tobey* v. *Taunton*, 119 Mass. 404; *Fox* v. *U. S. Refinery*, 109 Mass. 292.) The findings of the jury upon the trial of certain issues before Trial Justice SCOTT in March, 1902, are immaterial so far as these defendants are concerned, or in fact so far as any issue is presented as to the ownership by the Apthorp heirs in November, 1802, of the premises in question. (Herman on Estoppel, §§ 577, 610; *Gilman* v. *Stetson*, 16 Me. 124; *Shaw* v. *Parker*, 6 Blackf. [Ind.] 345; *Van Riper* v. *Berdan*, 14 N. J. L. 132; *Brock* v. *Nelson*, 29 S. C. 49.) These defendants' ancestors have never conveyed the land in the southerly half of the cross road. (*Holloway* v. *Delano*, 139 N. Y. 390; *English* v. *Brennan*, 60 N. Y. 609; *K. C. Ins. Co.* v. *Stevens*, 87 N. Y. 287; 101 N. Y. 411; *Tag* v. *Keteltas*, 92 N. Y. 625; *Lee* v. *Lee*, 27 Hun, 1; *Deering* v. *Reilly*, 167 N. Y. 184; *Harris* v. *Elliott*, 10 Pet. 30; *Bartow* v. *Draper*, 5 Duer, 130; *Coster* v. *Peters*, 5 Robt. 192; *Van Amringe* v. *Barnett*, 8 Bosw. 357; *Thayer* v. *Finton*, 108 N. Y. 394.) There is no equity whatever in the claim of the plaintiff Van Winkle and the defendant Van Winkle to the absolute ownership of the fee of the cross road simply because at the time it was closed upon the city map they were owners of the adjoining lands if the deeds under which they were owners of the adjoining lands do not include it. (*Wheeler* v. *Clark*, 58 N. Y. 267; *K. C. Ins. Co.* v. *Stevens*, 101 N. Y. 411; *King* v. *Mayor, etc.*, 102 N. Y. 175; *Darker* v. *Beck*, 32 N. Y. S. R. 193; *Jackson* v. *Hathaway*, 15 Johns. 447.)

*Edward Mitchell* for plaintiff, respondent.   The releases of November 30, 1802, are as if offered by the grantors as evidence in their own favor against their own grantees.  They are not evidence in favor of the grantors or claimant defendants against the grantees or the Van Winkles, but are evidence in favor of the Van Winkles, nor are they proof of " co-tenancy."  (*McKinnon* v. *Bliss,* 21 N. Y. 206.)  The grants are of " Lot No. 6 " and " Lot No. 8," as shown on the " Taylor Map," and the descriptions by metes and bounds convey to the center of the lane.  (*Bissell* v. *N. Y. C. R. R. Co.,* 23 N. Y. 61 ; *Matter of Ladue,* 118 N. Y. 213 ; *Haberman* v. *Baker,* 128 N. Y. 253 ; *Hennessey* v. *Murdock,* 137 N. Y. 317 ; *Matter of Mayor, etc.,* 20 App. Div. 404 ; *Potter* v. *Boyce,* 73 App. Div. 383 ; *Jackson* v. *Hathaway,* 15 Johns. 447.)

*David B. Ogden, Henry F. Miller* and *William Mitchell* for defendant respondent.   It was not error to direct the jury to answer in the negative the question whether Hugh Williamson purchased and held the property sold under the foreclosure sale as agent or trustee of the heirs of Charles Ward Apthorp, and whether, when he conveyed these premises, he did so at the request of the heirs of Charles Ward Apthorp, and for their use and benefit.  (*Steere* v. *Steere,* 5 Johns. Ch. 1.)   There is no evidence of a conveyance by Williamson to the Apthorp heirs.  The Van Winkles are not bound by the recitals in the deeds of November 30, 1802.  (*Robertson* v. *Pickrell,* 109 U. S. 608 ; *Edmonston* v. *Edmonston,* 13 Hun, 133 ; Bigelow on Estoppel, 286 ; *Carpenter* v. *Buller,* 8 M. & W. 209.)   Even if in some unexplained way the heirs of Charles Ward Apthorp had acquired as tenants in common in 1802 Hugh Williamson's title to the farm, including the bed of the Apthorp lane, the partition deeds executed in that year conveyed to each grantee the one-half of the bed of the Apthorp lane adjoining the premises granted.  (*Hennessey* v. *Murdock,* 137 N. Y. 317 ; *Graham* v. *Stern,* 168 N. Y. 517 ; *Bissell* v. *N. Y. C. R. R. Co.,* 23 N. Y. 61 ; *Seneca Nation*

v. *Knight*, 23 N. Y. 498 ; *Child* v. *Starr*, 4 Hill, 369 ; *Kings Co. Fire Ins. Co.* v. *Stevens*, 87 N. Y. 287 ; *Matter of Ladue*, 118 N. Y. 220.)

HAIGHT, J.    This action was brought for the partition of a parcel of land, which formerly was the roadbed of a public road known as Apthorp's lane or cross road to Harlem, bounded on the east by the westerly line of Eighth avenue or Central Park West and on the west by a line drawn parallel to the westerly line of Eighth avenue across such public road two hundred and forty-eight feet four and one-half inches westwardly therefrom.    The plaintiff and the defendant Elizabeth M. Van Winkle are sisters and their grantors are the owners of the lands abutting upon such public highway on either side thereof.    The road in question was opened through a farm or tract of land formerly owned by Charles Ward Apthorp prior to his death, which occurred in the year 1797, and extended from the Bloomingdale road to the Harlem commons.    It continued to be used as a public road until after the laying out and opening of Ninety-third and Ninety-fourth streets on either side of such roadway, after which it was discontinued by an act of the legislature in the year 1867 (Ch. 697) and 1895 (Ch. 1006).    The defendants-appellants claim title to the roadbed as the heirs at law or as the grantees of such heirs of Charles Ward Apthorp, who it is admitted, died seized of the premises in controversy.

The complaint, among other things, alleged that the plaintiff and the defendant Elizabeth M. Van Winkle and their predecessors in title had been in the possession of such roadbed for more than twenty years before the commencement of this action, and that after the death of Charles Ward Apthorp one Hugh Williamson became seized and possessed of the whole of said Apthorp farm, including the roadbed to such cross road on the 23d day of April, 1799.    The answer interposed by the defendants put in issue the allegation of adverse possession by the plaintiff and her co-tenant, and alleged, in substance, that Williamson became such grantee as the agent

and trustee of the heirs of Charles Ward Apthorp, deceased, and that the subsequent conveyances made by him were at the request of such heirs and for their use and benefit. Upon these issues formed by the pleadings the case was first moved for trial before Justice SCOTT and a jury, upon an order settling issues as to the question of adverse possession and as to whether Williamson took title as agent and trustee of the heirs of Apthorp. The trial resulted in the jury's answering all of the questions so ordered to be tried in the negative by direction of the court, and thereupon the case was moved for trial before Justice O'GORMAN at Special Term, who first denied a motion to set aside the verdict of the jury, and then upon a trial of the issues raised by the pleadings rendered a decision in favor of the plaintiff and her co-tenant, the defendant Elizabeth M. Van Winkle, in the short form, stating as his grounds therefor : (1) That Hugh Williamson, upon a foreclosure sale in 1799, acquired the title to all the premises in question, and that his title was absolute and unqualified ; that no conveyance from him to the Apthorp heirs had been proved or could be presumed ; that the deeds in which the Apthorp heirs joined were intended only as confirmatory deeds so as to operate by way of estoppel against claims that might thereafter be made by them or by their descendants ; that if such deeds were held to exclude the roadbed of the cross road it would follow that the title thereto was in Hugh Williamson or his heirs and not in the appellants-defendants. (2) That the confirmatory deeds by the Apthorp heirs carried the grant in each instance to the center of the road ; that the presumption is that the conveyance of land bounded by an existing street or road carries the fee to the center, and in case of ambiguity the construction most favorable to the grantee must be adopted ; that the lots in question were sold by reference to a map and the recital in the confirmatory deeds of a purpose to dispose of the entire estate establishes that the conveyances extended to the center line of the abutting lane ; that in none of the descriptions is reference made to the side of the road ; the words " beginning at a stake by the

fence of the Cross Road" considered with the remainder of the description did not necessarily indicate an intention to confine the grant to the side of the roadway ; that there is nothing in the deeds in question sufficient to overcome the presumption against the grantors' intending to reserve the title to the soil of the highway. The justice, therefore, concluded that the defendants, other than the defendant Van Winkle, had no interest in or title to any part of the premises in question either at law or in equity. Exceptions were filed to this decision only by the defendants Jane E. Holloway and others, appearing by James A. Deering as attorney. Thereupon an interlocutory judgment was entered and commissioners of partition appointed, upon whose report final judgment was entered, from which an appeal was taken to the Appellate Division and subsequently to this court, in which the appellants have given notice of a desire to review the order denying a new trial before the jury, and the interlocutory judgment.

As to the issues that were tried before Justice Scott and a jury, those pertaining to the question of adverse possession were disposed of in favor of the defendants-appellants and those questions, therefore, require no further consideration. As to the questions whether Hugh Williamson, in purchasing the premises upon the foreclosure sale, acted as the agent and trustee of the heirs of Apthorp or disposed of the property at their request and for their use and benefit, we have found no evidence that would justify a verdict of the jury in the affirmative, and, therefore, we consider the verdict of the jury answering the questions in the negative by direction of the court as disposing of those questions. We are thus brought to a consideration of the decision of Justice O'GORMAN as made upon the trial at Special Term. As we have seen, it was in the short form, so called, and must, therefore, be given the same force and effect as a verdict of a jury. (*Dr. David Kennedy Corp.* v. *Kennedy,* 165 N.Y. 353 ; *Cutter* v. *Gudebrod Bros. Co.,* 168 N.Y. 512.) The trial court has found that the deed given to Hugh Williamson by the sheriff upon the fore-

closure sale in 1799 operated to vest in him the absolute and unqualified title to the premises in question, and that no conveyance by him to the Apthorp heirs had been proved and that no such conveyance could be presumed. It appears that Apthorp, prior to his death, executed a mortgage upon so much of his farm as was east of the Bloomingdale road to the Marine Society of the City of New York for the sum of two thousand five hundred dollars, which mortgage covered three separate parcels, one consisting of about seventy-five acres, another of eighty-five and the third of about fifty acres of land; that after the death of Apthorp the Marine Society holding the mortgage instituted an action for the foreclosure of the mortgage in the Court of Chancery, in which it was determined that there was then owing for principal and interest the sum of two thousand eight hundred twenty-six dollars and sixty-six cents; that judgment was entered for foreclosure and sale, and that upon such sale the property was bid in by Hugh Williamson for the sum of ten thousand three hundred pounds; that that amount was paid over to the sheriff who executed and delivered to him the deed referred to; that the sheriff, out of such sum, satisfied the claim of the Marine Society, and then, upon the consent of the heirs of Apthorp, paid over the balance to Robert Troop, as administrator of Apthorp's estate. No question is raised by the appellants with reference to these facts, or that Hugh Williamson thereby became vested with the title to the roadbed of the lane or of the lands abutting thereon upon either side. It is contended, however, that subsequently he reconveyed his interest to the heirs of Apthorp, excepting and reserving only the interests of his two minor children, who were the grandchildren of the decedent and entitled to a one-ninth part of his estate, and that such conveyance was made is apparent from the recitals contained in the deeds subsequently executed by the heirs partitioning among themselves the lands of Apthorp which had not been otherwise sold or disposed of. It appears that in November, 1802, the Apthorp heirs executed conveyances to one another, parti-

tioning among themselves the lands of the decedent Apthorp remaining undisposed of, and that in such conveyances Hugh Williamson had set off to him one parcel and that he joined in the conveyance of the other parcels to the other heirs of Apthorp. The deeds contained the recital as follows: "Whereas, the said party of the first and second parts are the proprietors, as tenants in common of all the real estate whereof Charles Ward Apthorp, late of Bloomingdale in the Seventh Ward of the City and County of New York, esquire, died seized at Bloomingdale aforesaid; and whereas, the said party of the first and second parts as aforesaid as proprietors of the said real estate did, in virtue of a written agreement bearing date the 29th day of May in the year 1801, proceed to make partition of said real estate among themselves; and whereas, upon such partition the lot of land hereinafter particularly described fell to the share of said party of the second part." In addition to this, it appears that a survey had been made and a map drawn of the premises, which is known as the Taylor map, dated May, 1801, in which the lands left to be partitioned were divided into lots numbered one to eight, inclusive, and that, according to papers found in the handwriting of Hugh Williamson, the value of each lot was given, and was finally equalized by the distribution of the other proceeds of the estate, and that the value of such lots amounted to about twenty thousand dollars. No conveyance has been discovered from Williamson to the heirs other than the recitals contained in the deeds, to which reference has been made, and no explanation is given of the large surplus, amounting to nearly nine thousand pounds, that was paid by Williamson to the sheriff, and by him turned over to the administrator of the Apthorp estate. The trial court, as we have seen, has found that no conveyance by Williamson to the Apthorps has been proved and none can be presumed. It appears that Williamson, after he acquired title by virtue of the sheriff's deed, executed conveyances to some, if not all, of the heirs at law, and the trial court finds that the conveyances by the heirs to one another were intended only as confirmatory deeds, so as

to operate by way of estoppel against claims that might thereafter be made by them or their descendants. We realize fully the force of the contention of the appellants based upon the recitals contained in those deeds. The executing of separate deeds by Williamson of different lots to the Apthorp heirs, in accordance with their agreement to partition in 1801, is inconsistent with the recital contained in the other deeds, to the effect that they were all tenants in common, and this, to some extent, gives support to the theory of the trial court that the subsequent deeds in which all of the heirs joined were deemed and were given for the purpose of confirming the title already conveyed by Williamson.

Our jurisdiction to review is limited to questions of law. We must, therefore, in order to reverse a finding of a trial judge, hold that there is no evidence to sustain the finding. This, we think, cannot properly be done in this case. We have concluded, however, to consider the deeds in which the heirs of Apthorp joined for the purpose of determining whether they included the roadbed of the lane.

The general rule, both in England and in this state, is that the fee of the soil of the highway is presumed to belong to the adjoining owners and that a person holding land bounded on a highway between two estates is *prima facie* the owner to the center of such highway subject to the easement of the public to the right of way, but that such presumption can be rebutted by an express provision in the deed to the effect that the fee to the highway was not intended to be conveyed, or by the use of such words as necessarily exclude the highway from the description of the premises conveyed, as where the description of the premises is bounded upon the exterior line of a highway or commences at a point upon one side thereof and thence runs along the side to a point specified, but where the premises are bounded by, on or along a highway, or running along a highway without restricting or controlling words, the instrument must be, construed as conveying the grantor's title in the land to the center of the highway. The commencement of the description of premises at a corner or

a point particularly specified is always considered important, for ordinarily more attention is given by the parties to the locating of the point of commencement of the description than to the other points, but it is not conclusive, and where it is inconsistent with the other lines described, which show an intent to include or exclude the fee of the highway, effect will be given such intent; and where there is ambiguity with reference to the description or to the commencing point, or where there is doubt with reference to the intent of the grantor, the presumption that the fee was intended to pass will prevail; for in such case the construction must be most favorable to the grantee. Where a survey gives the dimensions and quantity of the land conveyed exclusive of the public way, it does not operate to destroy the presumption that the fee to the roadbed was conveyed; for the reason that such dimensions and quantity of the usable land is ordinarily deemed by the purchaser of paramount importance in determining its availability for the uses designed by him. Where a deed gives the boundaries of the land conveyed by courses and distances, without mentioning a street by which the same is bounded on one side, but where it appears that the distance given does in fact carry the boundary to the street and along it, it is the same as though the boundary were described as running to the street and along the same, thus extending the title to the center; and where a line runs to a stake or to a mark upon a fence or a tree upon the bank of a stream or upon the side of a highway, and thence along the meandering of the stream or along the highway, the stake, mark or tree will be deemed to indicate the place of the line and not the end thereof, by reason of the difficulty of maintaining a visible object marking the corner in the middle of a stream or in the roadbed of a highway, thus vesting the title in the grantee. (See 4 Am. & Eng. Ency. of Law [2d ed.], p. 809, and authorities there cited; also *French* v. *Carhart,* 1 N. Y. 96; *Putzel* v. *Van Brunt,* 8 J. & S. 501; *Livingston* v. *Ten Broeck,* 16 Johns. 14; Cowen & Hill's Notes to Phillips on Evidence, No. 526,

.p. 802; *Jackson* v. *Hudson*, 3 Johns. 375 ; *Sizer* v. *Devereux*, 16 Barb. 160 ; *Bissell* v. *N. Y. C. R. R. Co.*, 23 N. Y. 61 ; *Seneca Nation of Indians* v. *Knight*, 23 N. Y. 498; *Wager* v. *Troy Union R. R. Co.*, 25 N. Y. 526 ; *Perrin* v. *N. Y. C. R. R. Co.*, 36 N. Y. 120 ; *Wallace* v. *Fee*, 50 N. Y. 694 ; *Kings Co. F. Ins. Co.* v. *Stevens*, 87 N. Y. 287 ; *Matter of Ladue*, 118 N. Y. 213.)

The first of the deeds to which we call attention as covering the land in question is that of Hugh Williamson and others to Charlotte Vandenhenvel, dated November 30, 1802. It contains the recitals to which we have already called attention and then proceeds with the usual granting clause, for a consideration of one dollar, to quitclaim all the title and interest of the grantors to " all that certain lot of land situate in Bloomingdale in the seventh ward of the city and county of New York, distinguished by lot number six, beginning at a stake by the fence on the cross-road leading to Harlem, fifty links from the southeastern corner of the fence, thence running north 45° east parallel to the boundary fence ten chains sixty-five links to lot number five." The description then continues around the lot, returning on the westerly boundary " to the public road ; thence south  *  *  *  along the road  *  *  *  to the place of beginning."

It will be observed that, under the recital to which attention has been called, this deed was executed under an agreement of the heirs of Apthorp to partition *all* his real estate among themselves, and that such partition had reference to the lands bounded upon the public road, or cross road as it is called, laid out through his farm. We think it is apparent that they intended that it should have the same force and effect as if made in court, and that they designed to divide among themselves all of the lands belonging to their ancestor. (*Mott* v. *Eno*, 181 N. Y. 346, 373.) In that case GRAY, J., says : " The complaint evidences a purpose to partition *all* of the estate, whether it consists in lots particularly described, or in an interest in the beds of the streets. There is nothing to justify an inference that the decree in parti-

tion left any property unpartitioned." But returning to the description, we find the beginning to be "at a stake by the fence on the cross road leading from Harlem fifty links from the southeastern corner of the fence." It will be observed that there is no specification of the fence by the side of which there was a stake. It was by a fence on the cross road Which fence? Lot number six, which the parties intended to convey as plotted, was upon the northerly side of the cross road. The stake is said to be fifty links from the southeastern corner of the fence. The southeastern corner of the fence of necessity was upon the other side of the road. The direction of the stake therefrom is not given. Its distance was fifty links. It is claimed on the part of the appellants that there was a mistake in the description in locating the corner of the fence as the southeastern corner. But this would involve the determination of a question of fact, and how can we, sitting as a court of review, limited in jurisdiction to the consideration of questions of law only, determine this fact? No evidence of a mistake has been given, and we are, therefore, left to determine from the description where the beginning point is located. In this regard we think the description is ambiguous, and we must, therefore, consider the description of the other lines for the purpose of determining the intent of the parties. Referring to the description we find that upon the western boundary it returns "to the public road and thence south along the road to the place of beginning," thus bringing the case within the authorities which require us to presume that the intention of the grantors was to convey the title to the center of the public road.

We have also examined the subsequent partition of this property forming the record chain through which the plaintiff herein claims title, made in 1830. It is true that, in the partition deed, the fourth course in the description is omitted, but this was given in the report made by the commissioners appointed to partition the premises, and their report was confirmed by the court. The omission was evidently an over-

sight. Conveyances subsequently made have included the course. It was as follows: "And thence easterly along said lane or road to the place of beginning." It is true that the commissioners in their report commenced the description as beginning on the northwesterly corner of Eighth avenue and a lane or road leading from the Bloomingdale road to Harlem commons, which lane or road forms the southerly boundary of the tract of land in question. It is apparent that Eighth avenue had been laid out and opened during the interval between 1802 and 1830, but we have in the partition the boundary returning to the lane or road, and thence along the lane or road similar to that found in the first deed to which we have called attention; and, therefore, under the rule to which we have referred in the case of *Mott* v. *Eno*, the intention was to include the fee of the road.

The next deed to which we call attention is that of Williamson and others to Ann Apthorp. It bears date the same day of that to Charlotte Vandenheuvel and contains the same recitals. It describes the land conveyed as distinguished upon the plat or map as lot number eight "beginning at a stake by the fence on the public cross road, the corner of Mr. Jauncey's land; thence running south," continuing the description by metes and bounds around the lot to lot number seven, "thence north 54° east seventeen chains and thirty links to the public road, thence north 53° 30' west along the public road   *   *   *   to the place of beginning." It will be observed that the beginning point is "at a stake by the fence on the public cross road, the corner of Mr. Jauncey's land." The lot so intended to be conveyed was upon the southerly side of the cross road and is opposite to that conveyed to Vandenheuvel. Assuming that the stake referred to was at the fence on the southerly side of the road, yet if the lands conveyed to Jauncey ran to the center of the road the commencement would be at the corner of Mr. Jauncey's land and the stake by the fence would simply be a mark on the northern boundary of the line. However that may be, this being a partition deed in which, presumably, the heirs

intended to partition all of the property among themselves, the subsequent descriptions to the effect that the line returning ran to the public road and thence north along the public road to the place of beginning we think indicates an intention to convey the fee to the center thereof. This was evidently the understanding of the grantee Ann Apthorp, for, in her deed to Philip Brasher on March 13, 1807, while using substantially the same description, she states in addition thereto that the lands conveyed were bounded to the westward by the lands of James Jauncey, to the southward by the lands of Robert L. Bowne, to the eastward by the lands of Mrs. Shaw and to the northward by a public road, referring to the cross road in question. This is followed by numerous other conveyances forming the plaintiff's source of title.

The only other deed that it becomes necessary to consider is that of the Apthorp heirs to Jauncey, which was executed August 1, 1799, which conveys a tract of land westwardly of that embraced in lot seven. The description begins " at the corner of a field at the junction of the Bloomingdale Road with the Cross Road that leads to Harlem ; thence running along the Bloomingdale Road south" to a point specified ; thence continues with metes and bounds around to the place of beginning, giving quantity and providing " according to a map thereof made by Benjamin Taylor, one of the city surveyors of the said city of New York and hereunto annexed." While the map does not appear to be attached to this deed, it was proved and is in evidence, showing that the northern boundary of the Jauncey lot was bounded by the cross road in question. It thus appears that the boundary upon the northerly side was by the highway, thus bringing it within the rule to which we have called attention, where a deed gives the boundaries of the land conveyed by courses and distances without mentioning a street by which the same is bounded, where it turns out in fact that it was bounded by a street, the fee thereto will be deemed to be included.

It is contended, however, that the beginning point indi· cated a different intention. It was, as we have seen, at the

corner of the field at the junction of the Bloomingdale road with the cross road. It does not, however, appear that the field was fenced or that there was any visible monuments to locate the corner of the field. Without limiting words the commencing point would be deemed at the junction of the two roads, which would mean at the center thereof, and this would be strengthened by the fact that the line running therefrom was south along the Bloomingdale road, thus indicating an intention to convey to the center of the road. We are aware that a doubt as to the intention of the grantors was expressed in the opinion written in the case of *Holloway* v. *Delano* (139 N. Y. 412, 413). But the judgment was affirmed on another ground. Assuming, however, that there is a doubt as to the commencing point in the description, we are required under the rule to which attention has been drawn, in case of a doubt, to construe the description most favorably to the grantee, and taking into consideration the other lines of description, which in fact bound it upon the cross road, we think the fee thereto must be deemed to have passed to Jauncey.

It follows that the judgment should be affirmed, with costs.

Gray, J. I shall agree with Judge Haight's conclusion that this judgment should be affirmed. I think it to be very clear that the claim of the appellants to be tenants in common with the Van Winkles of the premises in controversy is without adequate support in the facts and that it is beyond the rule of presumption. Williamson having acquired title under the sheriff's deed, in 1799, either his subsequent conveyances carried to his grantees the fee of the soil in the lane, or it remained in him and his heirs. The argument that a deed should be presumed from him to the Apthorp heirs is untenable. I do not understand that a conveyance will be presumed to create a title, but, only, to support a just title and to prevent its defeat. As Tindal, C. J., stated the rule in *Doe* v. *Cooke*, (6 Bing. 174, 179), "no case can be put in which any presumption has been made, except where a title has

been shown by the party, who calls for the presumption, good in substance, but wanting some collateral matter, necessary to make it complete in point of form." The only case, as the same judge pointed out, would be where a possession had been shown, consistent with the fact to be presumed.

The question whether the description in the deeds suffices to convey the roadbed of the lane is not without its difficulty. In such cases, in seeking for the intention of a grantor, a certain latitude of inference is allowed, based upon the circumstances, as well as upon the language employed. We may consider the general facts, in connection with the legal presumption which obtains, in the absence of words necessarily excluding its operation, that a highway, or street, when referred to as a boundary, is to be regarded as a line and is, therefore, included to its center. There is nothing in this case to rebut the presumption against the grantor's intending to reserve to himself the title to the soil of this cross road, or lane, and there is much to favor it, as Judge HAIGHT has pointed out. Whether, as in the two deeds to Charlotte Vandenhuvel and Ann Apthorp, placing the point of beginning "at a stake by the fence" shall be controlling upon the question of the exclusion, or inclusion, of the bed of the boundary road is a question which I will concede to be dependent upon, and to be determined by, the running of the subsequent courses. The stake, as a monument for the survey, could not well be in the roadway. If there had been the intention to reserve the fee in the soil of the road, it would have been natural to place the point of beginning in the side of the road. The subsequent courses are run to, or along, the road and the conveyance is by reference to the Taylor map. These considerations, together with the further one of the intention of the Apthorp heirs to partition what there was of their estate, incline me to agree with the construction given by Judge HAIGHT.

The third deed of the Jauncey parcel underlies the title to a very small and irregular part, or gore, of the premises, varying from about one foot to one foot and a half in width. In view of our decision in the case of *Holloway* v. *Delano,* (139

N. Y. at p. 412), it is difficult to hold, without conflict, that the starting point of the description, " at the corner of the field at the junction of the Bloomingdale Road with the Cross Road that leads to Harlem," is not in the side of the road. It may be that the appellants have failed upon the trial to connect their claim of title with that derived by the Van Winkles, as the respondents argue ; but I shall place my vote, upon this branch of the case, upon the proposition that the appellants can have no interest in this gore of land. The title to it, if not parted with in the Jauncey deed, remained in Hugh Williamson, who is shown to have been the owner of the whole Apthorp farm under the sheriff's deed, in April, 1799. If in August, following, he conveyed to the Jaunceys by a deed, in which the Apthorp heirs joined with him as grantors, his absolute title is not negatived by that circumstance. No conveyance from him to the Apthorps was shown and the only presumption permissible is that they were joined to quiet all questions of title. The Apthorps, clearly, as I think, had no interest in that portion of the lane and, hence, none could be derived by the appellants upon which to predicate their claim to a tenancy in common with the Van Winkles.

EDWARD T. BARTLETT, VANN and WILLARD BARTLETT, JJ., concur with HAIGHT, J. ; GRAY, J. (in memorandum), concurs in result ; CHASE, J., dissents on opinion below ; CULLEN, Ch., J., absent.

·Judgment affirmed.