MONOGRAM DEVELOPMENT CO., INC., Respondent, *v.* NATBEN CONSTRUCTION CO., INC., Appellant.*

Second Department, January 10, 1930.

*Meier Steinbrink* [*Harold M. Kennedy* with him on the brief], for the appellant.

*Harry G. Anderson* [*Louis J. Moss* with him on the brief], for the respondent.

CARSWELL, J. Plaintiff brought an action to impress a lien for $1,500 upon certain property owned by the defendant, being the down payment under a contract of sale, together with $491.48, the plaintiff's expense for counsel fees and examination of title. The defendant answered denying certain allegations of the complaint.

Defendant moved for judgment, claiming the complaint is insufficient. The motion was denied. Defendant appeals from the order entered thereon.

The complaint, with four exhibits annexed thereto, may be condensed for our consideration.

It is alleged that on December 1, 1928, the plaintiff as buyer and the defendant as seller made a contract for the purchase of certain real property in Kings county. On the day set for closing, February 4, 1929, it is alleged that the plaintiff made a tender of performance but the defendant could not perform in accordance with the contract for the reason that the title was defective in that there were on record affecting the property three agreements which disabled the defendant from making good title. The validity of this claim of defects in the title rests upon the effect of these three agreements, which are annexed to the complaint, with respect to the property described in the contract of sale. These agreements are of record.

One agreement is dated September 26, 1891, and is labeled Schedule B. It is called the railroad and sewer agreement.

Another agreement is dated September 26, 1891, and is labeled Schedule C. It is called the water agreement.

The third agreement is dated April 28, 1892. It is labeled Schedule D and is the agreement which modifies the terms of the first agreement, Schedule B, which was concerned with railroads and sewers.

Before inquiring particularly as to these agreements, the provisions of the agreement of purchase, Schedule A annexed to the complaint, should be noted. That agreement of purchase describes the property by metes and bounds. The courses are run *along* the sides of the streets involved. The streets are excluded from the description. The only mention of the right, title or interest in the streets is in the printed clause which reads: " This sale covers all *right, title and interest of the seller of, in and to* any land lying in the bed of any street, road or avenue, opened or proposed, in

front of or adjoining said premises, to the centre line thereof, and all *right, title, and interest of seller in and to* any award made or to be made in lieu thereof * * *."

There is no covenant in the contract, nor is there any representation made therein or allegation made in the complaint, *as to the nature or extent of the seller's interest in the street.*

The railroad and sewer agreement (Schedule B) provides that the West Brooklyn Land Company as grantor conveys to Snyder and others the right to erect a railroad upon the streets and lands owned by the land company, as well as the exclusive right to erect poles for lighting and pipes and conduits for a sewage system. On April 28, 1892, this agreement was modified by Schedule D so as to make it three-cornered, the parties being the West Brooklyn Land Company, Snyder and others and the individuals who had purchased land from the West Brooklyn Land Company. By this modifying contract the West Brooklyn Land Company conveyed to its grantees the absolute title to the streets and avenues abutting their property. Snyder and others agreed that if they sold the privileges they possessed in the streets they would deposit the moneys with the Kings County Trust Company, by which corporation it was to be distributed to the owners of the premises in proportion to their frontage on the streets. It was further stipulated that no railroads would be placed upon the streets or avenues without the consent of the owners of one-half in value of the area affected.

The water agreement (Schedule C) was a grant by the West Brooklyn Land Company to the West Brooklyn Water Company of the sole right to lay pipes for the purpose of distributing water to the premises affected.

The complaint does not allege that any rights have ever been exercised under these agreements, but it asserts that the title to the premises involved in the contract of sale between the plaintiff and the defendant is incumbered and burdened by these above-mentioned agreements.

The Special Term has held that the plaintiff is correct in its contention that these agreements burden the land covered by the contract of sale between the plaintiff and the defendant despite the fact that that contract describes the property in a manner that excludes the streets from the description of the property intended to be conveyed. It does this on the theory that the case of *Ansorge* v. *Belfer* (248 N. Y. 145) may be distinguished from the situation herein, and it also does so on the assumption that in the *Ansorge* case " no express interest in the street was mentioned in the contract, while here the vendor expressly con-

tracted to convey its interest in the street abutting, and the vendee was justified in believing that some right in the street was to be conveyed."

This presents the controlling question involved in this appeal. The record on appeal in the *Ansorge* case discloses a provision with respect to streets precisely similar in all its terms to the language contained in the contract annexed to the complaint herein. This eliminates this element as a ground of distinction between the *Ansorge* case and the instant case. In *Ansorge* v. *Belfer* (*supra*, 149) it was held that an easement to maintain telephone lines in a street does not affect land contracted to be conveyed where the street is not included within the boundaries of the land under contract, and that, consequently, an objection to marketability of title on that ground was not well taken. In the *Ansorge* case as in the case at bar the description of the property to be conveyed ran along the lines of the streets. In the *Ansorge* case the claimed defect of title was founded upon an easement to maintain telephone lines on the street, just as in the case at bar the objection to marketability is founded upon the outstanding and seemingly never acted-upon right under these old agreements of 1891 to maintain a railroad, poles for lighting system and pipes for sewage system under one agreement, and, under the other agreement, to maintain pipes for a water distributing system in the streets not included in the description of the property to be conveyed under the contract between the plaintiff and the defendant. The only difference between the two cases seems, therefore, to be that the degree of burden upon the streets possible under the agreements involved in the case at bar is greater than that involved in the *Ansorge* case. In both instances such burdens as grow out of the easements affect lands, to wit, streets, not included in the description of the property sold by the defendant to the plaintiff.

It is not necessary to concern ourselves with the doctrine that the existence in the highway of sewers, water mains and gas pipes, and such incidental uses of the highway in connection therewith, are not in this case to be deemed incumbrances. (*Fossume* v. *Requa*, 218 N. Y. 339.) Neither is it necessary to consider the degree of burden involved by reason of the modifying agreement entered into on April 28, 1892 (Schedule D), providing for the paying back to the abutting property owners the proceeds flowing from the utilizing of the right to exercise the easement so far as it concerned railroads, etc., it being the claim of the defendant that this moderated the burden to the extent of demolishing it, while, on the other hand, the plaintiff claims that the proposal involved in the agreement for compensating the abutting property owners

on the basis of their frontage is inadequate and not as complete as would ordinarily be possessed by abutting owners if there were no such agreement or agreements affecting the property; that ordinarily a more adequate compensation could be had in the event that the right to place a railroad in the street were accorded to a utility company.

The narrow question presented is whether or not the confining of the description in the contract between plaintiff and defendant to land other than that affected by these old agreements, which concern only the streets, precludes the assertion that these old agreements constitute a burden upon the fee of the property described, which property abuts the streets. I think that the doctrine of the *Ansorge* case requires that it be held that these agreements are not incumbrances. The only difference between that case and this case is that in a possible instance the easements in the case at bar might be more burdensome on the street than was the easement respecting telephone poles involved in that case. But in both instances the easements concern property which is not within the boundaries of the land contracted to be conveyed. Moreover, the contract in the case at bar carefully confines the right of the buyer, with respect to the streets, to the conveyance by the seller to the buyer of such " interest of seller of, in and to any land lying in the bed of any street." This is not an express or implied representation that the seller has any interest in the streets. Such interest, if any, as the seller does have, the buyer is entitled to under the contract, and nothing more. It so happens that such interest is such existing rights as inhere in the land abutting on the streets, and such interest is subject to such burdens as then exist, to wit, these easements with respect to sewer and water pipe and lighting poles and possible railroad uses with the ameliorating element of possible compensation to the owners in the event that certain of these uses are ever availed of in the future.

The plaintiff, respondent's, argument seems to center on the claim that the agreements impose unusual burdens upon the streets abutting the property sold, have a diminishing effect on value and, therefore, constitute an incumbrance upon the property sold and render the title unmarketable. The complete answer is that the contract expressly limits what is to be conveyed, and that is, the property described, which does not include the streets, and such interest in the streets as still persists without any representation as to the extent of that interest. The degree of the burden of these easements upon the streets does not render this title unmarketable. These easements do not interfere with access, and to the

extent that they do or in addition may interfere with light and air, provision is made for compensation to the abutting owners. In any event there is no representation by the seller of the degree of the right, reposing in it, to light and air or even of access in and to the street abutting the property described in the contract.

Accordingly, the *Ansorge* case should be given full effect in the case at bar, the doctrine of which case, so far as pertinent, is: " The objection to the marketability of the title is not well taken. The deed of conveyance describes the lands by the lines of the street as ' beginning at a point on the easterly side of Beach 140th street ' and as ' running along the easterly side of Beach 140th street ' and does not include the street. It was held in *Fossume* v. *Requa* (218 N. Y. 339, 342) that a telegraph or telephone franchise over land agreed to be conveyed free from incumbrances is an incumbrance of which the buyer may complain. But the easement in question does not affect the land to be conveyed. The street was necessarily excluded from the description. (*Van Winkle* v. *Van Winkle*, 184 N. Y. 193, 203.) It was not an incumbrance and should have been disregarded."

The order appealed from should, therefore, be reversed upon the law, with ten dollars costs and disbursements, and the motion of defendant granted, with ten dollars costs.

LAZANSKY, P. J., RICH, KAPPER and SCUDDER, JJ., concur.

Order denying defendant's motion for judgment on the pleadings reversed upon the law, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.