HENRY C. KORNEMAN, Appellant, v. JOHN E. G.
DAVIS et al.

Division One, March 2, 1920.

1. **CONVEYANCE: Latent Ambiguity: Admissibility of Acts of Par-
ties.** When there is a latent ambiguity in the description of land
as contained in the deed, the circumstances and situation of the
parties and the construction they have put upon the deed by their
acts, are admissible in evidence; but when the language of the
deed contains no ambiguity, or when such language, applied to
the subject-matter and circumstances, leaves no substantial doubt
as to the property conveyed, then the acts of the parties under the
deed are inadmissible.

2. ———: ———: **Quantity.** An estimate of the land conveyed by
a deed as "about thirty acres" is a part of the description, and
may be used to ascertain the particular thing conveyed.

3. ———: ———: **Beneficent Acts of Grantor.** Where a father con-
veyed thirty acres of land lying south of a creek, as a gift to a
daughter, reserving a life estate to himself, the taking possession
by the daughter of an adjoining four-acre tract lying east of the
creek and his acquiescence therein, a gift of a small amount of mon-
ey arising from the sale of logs therefrom and a failure of the
father to object to her taking timber therefrom to build an ice-
house, are to be regarded as other acts of kindness towards the
daughter without regard to his or her legal rights, and not as an
interpretation by conduct of the description of the land contained
in the deed, and are not admissible to show that the four-acre
tract was conveyed.

4. **PRACTICE: Finding of Facts.** A statutory finding of facts should
embrace all the material facts bearing on the issues involved, and
should set them out in detail, and not merely state conclusions and
inferences therefrom.

Appeal from Clinton Circuit Court.—*Hon. Alonzo D.
Burnes,* Judge.

REVERSED AND REMANDED.

*W. S. Herndon, J. M. Johnson* and *Henri L. Warren*
for appellant.

(1) The solution of this controversy turns upon the
construction of the deeds from Thomas P. Jones to his
daughter and the subsequent deed in partition from the
sheriff to plaintiff. In construing the first mentioned
deed, the primary task is to ascertain the true intention
of the grantor, and unless there be found some ambiguity
or uncertainty with respect to the description of the land
conveyed, resort cannot be had to parol evidence of state-
ments and acts of the grantor to ascertain such intention.
2. Devlin on Real Estate (3 Ed.), p. 2025.; Long v. Timms,
107 Mo. 512.; Weissenfels v. Cobel, 208 Mo. 515; 9 C. J.
158; 17 Cyc. 618; Long v. Wagoner, 47 Mo. 178.; Heady
v. Hollman, 251 Mo. 633; Warne v. Sorge, 258 Mo. 165;
18 C. J. 262; Elsea v. Smith, 273 Mo. 396.; Eckle v. Ry-
land, 256 Mo. 440; Howell v. Sherwood, 242 Mo. 536;
O'Brien v. Ash, 169 Mo. 283. (2) Where the description
of the land in the deed when considered in the light of

the physical conditions of the subject-matter as referred to therein is open to two constructions—one clear, definite and certain, and the other ambiguous, indefinite and uncertain—the clear and definite meaning will be taken as expressive of the real intention of the grantor. 9 C. J. 152, 208 and note 77; Hubbard v. Whitehead, 221 Mo. 672; 1 Greenleaf on Evidence (16 Ed.), sec. 605 L; 18 C. J. 217. (3) Shoal Creek is a natural monument. It completely traversed the sixty-acre tract of the grantor. (4) Another rule of construction of a deed is a call for quantity. When others calls in a deed will not aid the court, then a call for quantity will be used to ascertain the true intention of the grantor before parol evidence of his intention can be resorted to. Davis v. Hess, 103 Mo. 31; 9 C. J. 171, sec. 30; 9 C. J. 163, sec. 44 at p. 176, p. 228; Behert v. Myers, 240 Mo. 58; Cole v. Mueller, 187 Mo. 638. (5) Considering the relationship of father and daughter, which existed between the grantor and grantee, the fact, if it be a fact, that the father allowed the daughter to take timber from the disputed tract for certain specific purposes would not constitute evidence of ownership or claim of ownership to the disputed tract or of an intention to include it in the grant to his daughter. 18 C. J. 261; Miller v. Miller, 91 Kan. 1; Davis v. Hardin, 1 Ky. L. 165; Hubbard v. Hubbard, 140 Mo. 305.

*Wm. Henry* and *Frost & Frost* for respondent.

(1) If there is any doubt as to the meaning or application of the term "south of Shoal creek" as employed in the deeds, the meaning and application given by the parties who used them should prevail. Fetley v. McElmurry, 201 Mo. 393; St. Louis Gaslight Co. v. City of St. Louis, 46 Mo. 121; Rose v. Corborating Co., 60 Mo. App. 32; Richardson v. C. & A. Rv. Co., 62 Mo. App. 5; Berncro v. Real Estate Co., 134 Mo. App. 299. Dobbins v. Edmonds, 18 Mo. App. 315; Morey v. Feltz, 187 Mo. App. 663; Laclede Const. Co. v. Moss Tie Co., 185 Mo. 67;

Pub. Co. v. McNichols, 170 Mo. 735. (2) Where all the parities have acted on a particular meaning of an agreement or contract there is no better mode of ascertaining the true meaning than by their acts. Union Depot Co. v. Ry. Co., 131 Mo. 305. (3) The suit for the partition of the lands of Thomas P. Jones and the proceedings and sale therein, did not have the effect to convey any title other than that which remained in his heirs after his death. Powell v. Powell, 267 Mo. 125; Jelley v. Lamar, 242 Mo. 50; Whitsett v. Whitsett, 159 Mo. 25; Propes v. Propes, 171 Mo. 416.

SMALL, C.—Appeal from the Clinton County Circuit Court. Suit in ejectment for four and a fraction acres of land. Judgment for defendants. Plaintiff appeals. Plaintiff claims title by sheriff's deed under decree in partition of certain lands in said county belonging to the widow and heirs of Thomas Jones, deceased. He died on the 9th of December, 1915, intestate, leaving surviving him, his widow, Nancy T. Jones, his four sons, William M., James L., Charles G. and Harrison Jones, and two daughters, Susan B. Kennedy and Zelleta Heflin. On March 12, 1914, in consideration of one dollar and love and effection, said Thomas Jones executed a warranty deed conveying to his daughter Susan B. Kennedy land in said deed described, as follows:

"The following described lots, tracts or parcels of land, lying, being and situate in the County of Clinton and State of Missouri, to-wit: That part of the east half of the south east quarter of Section Eleven, Township Fifty-six, of Range Thirty, lying south of Shoal Creek, containing about thirty acres.

"*Recital,* The grantors herein reserving unto themselves or the successors thereof a life estate in the lands hereby granted, and it is further provided that this conveyance is made on the express condition that if the grantee herein attempts to alien, sell or convey the lands granted or place any lien thereon during the life of the grantors herein, or either of them, without their written

consent duly acknowledged before a notary public the
lands herein shall revert to and the title shall uncon-
ditionally vest in the grantors, their heirs and assigns.''

  At the time this deed was executed, said Thomas
Jones owned the south three-fourths of the said east half
of the southeast quarter of said Section Eleven. The
judgment in partition was rendered at the April Term,
1917, of the said court. The property was sold at sheriff's
sale in partition September 24, 1917. The tract pur-
chased by plaintiff in his sheriff's deed is described as
follows:

  ''All that part of the south three-fourths of the east
half of the southeast quarter of Section Eleven, in Town-
ship Fifty-six of Range Thirty lying north of Shoal
Creek, and containing thirty acres more or less.''

  The sheriff's deed was dated and duly acknowledged
in open court on October 2, 1917. Upon receiving his
deed, the plaintiff proceeded to erect a fence on the south
and east sides of the land, inclosing the tract in controv-
ersy, when defendant Davis appeared and tore the fence
down. He was accompanied by the ''silent sentinel of
the 'fire-side''—the family shotgun—and suggested the
propriety of ''blowing a hole'' through one of plain-
tiff's boys, so the boy testifies, ''big enough to crawl
through.''

  A plat of said south three-fourths of said half-quar-
ter section, made by a surveyor, witness for plaintiff,
was introduced in evidence, of which the following is a
copy so far as it shows the location and course of Shoal
Creek in and through the said tract:

The land in controversy is the shaded part in the bend of Shoal Creek in the north half of the tract. The plaintiff claims that he obtained title to it by virtue of his sheriff's deed under the sale in partition, and the defendants claim title to it by virtue of a deed from Susan B. Kennedy and husband, dated October 23, 1917.

Plaintiff's surveyors further testified that the part of the tract shown on the plat south of the creek, where it runs irregularly through the tract from west to east, contained 29 acres and 97 rods and the part north of said creek, including the part in controversy, contained 27 acres and 108 rods. That the tract in controversy contained 4 acres and 133 rods.

There was evidence pro and con to the effect that before the sale in partition took place an announcement was made to all bidders that Mrs. Kennedy owned the tract in controversy, but the sheriff, never-the-less, offered and sold the land to plaintiff, as described in his sheriff's deed.

The partition proceedings to which all the Jones heirs, including Mrs. Kennedy, were parties, included several different tracts, and the judgment therein, after reciting them all, stated they contained "264 acres more or less." Giving the other tracts the acreage they were entitled to, as regular Government subdivisions, the plaintiff's tract must in said judgment have been estimated as containing "30 acres more or less," as stated in the deed of the sheriff to the plaintiff.

There was evidence that Harrison Jones, one of the sons, was in possession of the whole 60-acre tract under some sort of a verbal arrangement with his father, when the deed to Mrs. Kennedy was made, and that he refused to give up possession until sometime in December 1914, when his father paid him $100 — he says, to pay for some clearing he had done, and other witnesses say, to surrender possession to his sister, Mrs. Kennedy. There is evidence that Mrs. Kennedy then made a verbal lease to her brother Charles of all of her property, intending to include the property in question therein, and that he afterwards made a verbal lease thereof to the defendant Davis. There also arose a controversy as to payment for some walnut logs, and there is testimony that the father paid Mrs. Kennedy $33.33 for logs cut from the property in question. Charles Jones and others testify to this. But, according to Harrison Jones, this money was paid her for logs cut on her land further south, about which there is no dispute. After December, 1914, and during the father's life, some timber was cut from the land in question to make lumber for an ice house, which Mrs. Kennedy built on another tract of ground. Also other timber cut off by her. There was no fence around the ground conveyed to Mrs. Kennedy to separate it

from the reminder of the tract. Charles Jones had charge of the rest of the tract for his father, and there was evidence introduced by defendants, that wood was cut from the land west of the tract in question, admittedly owned by the father and stored and piled on the land in controversy after the deed to Mrs. Kennedy. That the controversy between the Jones brothers at sometime during this period was also somewhat calorific is shown by the suggestion of one of the witnesses that on one occasion said "silent sentinel," though not actually present, was referred to with approval by said Harrison Jones.

At the close of the testimony, the court made the following finding of facts:

"The court makes the following finding of facts as requested by the attorney for the plaintiff at the begining of the trial. After hearing all evidence, the court finds from the weight of the evidence, that Thomas P. Jones and wife conveyed the land in question to their daughter Mrs. Kennedy, and after the sale to Mrs. Kennedy that Mrs. Kennedy exercised acts of ownership over the land, and by her acts the said Thomas P. Jones knew that she was claiming it as her own and acquiesced therein.

"And the court further finds that said Mrs. Kennedy sold said land to Mr. Davis, who used it and had possession and control of it as his own up to the time that his possession was interfered with by the plaintiff in this case, and that the defendant still has the open and actual possession of said land and did have at the commencement of this suit, and that the defendants have the legal title to said land and are entitled to the possession thereof."

To which finding of facts the plaintiff excepted.

The court refused the following declarations of law asked by the plaintiff:

"6. The court, sitting as a jury, declares the law to be that if the court finds from the evidence that Shoal Creek entered the west side of the east half of the south-

16—281 Mo.

east quarter of Section 11, Township 56, Range 30, in Clinton County, Missouri, and flowed across said half-quarter section, emerging therefrom on the east side thereof, passing beyond the east line thereof, then the deed from Thomas P. Jones to Susan B. Kennedy, offered in evidence, only conveyed that part of said half-quarter section lying south of the point where said Shoal Creek entered on the west line and the point where said creek passed through and beyond the east line of said half-quarter section, notwithstanding the fact said creek, after passing beyond the east line of said half-quarter section, again entered the same and flowed around the tract in controversy before again passing beyond the east line of said half-quarter section.

"7. The court, sitting as a jury, declares the law to be that all statements or acts of Thomas P. Jones, deceased, and all acts of the defendant's grantor, with reference to the land in controversy, as testified to by the witnesses for the defendant, are not competent evidence in this case and are not to be considered in making and finding on the issues in the case."

Plaintiff duly excepted to the court's refusal to give said declarations.

Failing to obtain a new trial, the plaintiff appealed to this court.

I. It is true that when there is a latent ambiguity in a description of land, the circumstances and situation of the parties, and the construction they have put upon the deed by their acts, are admissible in evidence. [Tetley v. McElmurry, 201 Mo. 382; Gas Co. v. St. Louis, 46 Mo. 121; Union Depot Co. v. Railroad, 131 Mo. 291.]

*Acts of Parties.*

But it is also true that when the language of the deed contains no ambiguity, or when such language applied to the subject-matter and circumstances leaves no substantial doubt as to the property conveyed by the deed, then the acts of the parties under the deed are inadmissible. [Gas Co. v. St. Louis, 46 Mo. 121; Weissenfels v.

Cable, 208 Mo. 515; Beheret v. Myers, 240 Mo. l. c. 75.]

In Gas Co. v. St. Louis, 46 Mo. l. c. 131-2, the court said: "The intention of the parties must be *first sought* in the instrument in all its parts, in its scope and purpose, and in the circumstances in which the parties were placed; and before deciding whether we may consider the practical interpretation of the parties, we must see whether the intention is clear and unmistakable." (The italics are ours.)

In Beheret v. Myers, 240 Mo. l. c. 75, quoting from Chief Justice KENT, this court said: "'It is a sound rule of evidence that you cannot alter, or substantially vary the effect of a written contract by parol proof. This excellent rule is intended to guard against fraud and perjuries: and it cannot be too steadily supported by courts of justice. . . . If the words of a contract be intelligible, says Lord Chancellor THURLOW (Shelburne v. Inchiquin, 1 Bro. C. C. 341), there is no instance where parol testimony has been admitted to give them a different sense.'"

It is also ruled that in construing a deed all the words of the deed within its four corners must be considered together and given effect and that words stating the estimated quantity or area are part of the description of the land and must be so considered in fixing the identity of the tract conveyed. In Davis v. Hess, 103 Mo. l. c. 36, BLACK, J., said: "The rule of law is well settled that the call for quantity may be resorted to for the purpose of making that certain which otherwise would be uncertain. . . . In deeds as well as in wills and contracts, we are to determine the intention of the parties thereto, and this is done by taking the instrument as a whole." To the same effect is Cole v. Mueller, 187 Mo. l. c. 647, where Fox, J., said that the estimate of the area as a certain number of acres "more or less" is "part of the description." BROWN, C., in Whitwell v. Spiker, 238 Mo. l. c. 641, refers to and follows the rule in Cole v. Mueller, supra, as "a means . . . of ascertaining the particular thing" to which the description in the deed applies.

In this case, the deed to Mrs. Kennedy conveys all of the tract therein mentioned, "lying south of Shoal Creek, and containing about thirty acres." The testimony of the surveyors for plaintiff was that the area of the land south of Shoal Creek, running irregularly from west to east through the tract, was 29 and a fraction acres, which thus fully identifies that part of said tract as the land conveyed and intended to be conveyed by the Kennedy deed. The four-acre tract in question cannot by any fair use of the English language be said to lie south of Shoal Creek at all, any more than it lies north of that part of Shoal Creek constituting its southwesterly boundary. It could only be described as a tract by itself lying east of Shoal Creek. To include it in the deed of Mrs. Kennedy would make her deed contain two disconnected tracts substantially exceeding the estimated area in her deed. So, too, a strong circumstance is that Shoal Creek running irregularly through said tract, as it does, from west to east, is a natural dividing and boundary line between the two nearly-equal parts of the tract, and leaves each one contiguous body of land. The partition proceedings, too, indicated that the portion north of the creek still belonging to the estate contains 30 acres more or less, which would exclude the tract in controversy from Mrs. Kennedy's deed. The language of Mrs. Kennedy's deed when applied to the subject-matter and potent surrounding circumstances is perfectly clear and without ambiguity. Therefore, parol evidence of the interpretation of the parties by their conduct or otherwise was inadmissible. Besides, the parol evidence admitted in this case does not *necessarily* show that either the grantor, Thomas Jones, or the grantee, Mrs. Kennedy, by their conduct, thought that the tract in question was conveyed to Mrs. Kennedy by the deed from her father. That deed expressly reserved a life-estate in the grantor, Thomas Jones, so that his act in permitting his daughter to lease it to his son and permitting him to sublease it to Davis was giving her something which the deed clearly entitled the father to retain, and was a parol

gift outside of the deed and without reference to his legal rights thereunder. The father being entitled to the possession by the express terms of the deed, the taking possession by the daughter, and the father's acquiescence therein, must be regarded as another act of kindness towards his daughter, and not as an interpretation of his or her legal rights under the deed. This being so, the gift of the $33.33 from the sale of the logs, and the failure to object to his daughter taking timber to build an ice-house or for other purposes from the land in question, might also be referable to the natural disposition of the father to make gifts to his daughter without regard to his or her legal rights under the deed. These isolated and inconclusive acts of the father, of but short duration (he died in December, 1915), are not of such duration and unequivocal character as to be regarded in the construction of the deed.

In the Gas Case, supra, 46 Mo. 1. c. 128, this court said: "It is true that evidence of such understanding should not be entertained when the language is clear and will admit of but one interpretation, because in that case, unless there is fraud or mistake *the language used is the best possible evidence* of the intention. Nor should any regard be paid to loose declarations or equivocal or isolated acts, but the continuous conduct of the parties for a series of years concerning the subject-matter of the contract, and *in fulfillment of its conditions—every act pointing in the same direction*—may make their understanding as clear as the greatest precision of language." (The italics are ours).

The acts of the parties admitted in this case did not measure up to the standard thus required by the law to make them admissible. The court below, therefore, erred in refusing to give plaintiff's declaration numbered 7, declaring them inadmissible.

II. Mrs. Kennedy's deed from her father not covering the tract in question, there is no doubt that it passed to the plaintiff by virtue of his purchase and deed from

the sheriff in partition. The description in his deed is all of said tract "lying north of Shoal Creek containing thirty acres more or less." The surveyors of plaintiff testified that the area north of Shoal Creek (running through the tract from west to east) was 27 and a fraction acres, including the tract in controversy, and excluding it, 22 and a fraction acres. It was all north of the line of the creek above indicated. Applying the same rules of construction heretofore applied to Mrs. Kennedy's deed, the deed of the sheriff to the plaintiff embraced and conveyed the land in question.

*Partition.*

III. What we have said respecting the construction of these two deeds has been on the assumption that the areas and location of Shoal Creek, testified to by the surveyors for plaintiff, were substantially correct, but respondent's, while not denying seriously, do not admit such correctness. The lower court in its finding of facts omitted the facts relating to the areas of the different tracts and location and course of Shoal Creek in and through the property. In this respect it committed error. A statutory finding of facts, as this purports to be, should embrace all the material facts bearing on the issues involved, and should set them out in detail, and not merely state conclusions or inferences therefrom. Had the facts above indicated been found by the court, or admitted by the respondents, to be substantially as testified to by the surveyors, who testified for the plaintiff, our duty would be to reverse the case outright, and direct a judgment for the plaintiff. But, as the record stands, the judgment of the lower court must be reversed, and the cause remanded for another trial to be proceeded with according to the views herein expressed. It is accordingly so ordered.

*Finding of Facts.*

*Brown* and *Ragland, CC.,* concur.

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of the court. All of the judges concur.