St. Joseph Lead Company, a Corporation, v. Fred W. Fuhrmeister, Appellant.—No. 38872.—182 S. W. (2d) 273.

Division One, September 5, 1944.

*Robert A. McIlrath* and *Bryan, Cave, McPheeters & McRoberts* for appellant.

234

*W. Oliver Rasch, William R. Bascom* and *Nagel, Kirby, Orrick & Shepley* for respondent.

236

DALTON, C.—Action at law to quiet title to a part of a lot in Desloge, St. Francois County, with an answer and cross action in equity to quiet title and remove cloud, and a counterclaim for improvements and the establishment of a lien, if title be quieted in plaintiff. Judgment went for plaintiff on the petition, cross petition and counterclaim. Defendant has appealed.

The petition alleged that on July 1, 1936, the National Lead Company, hereinafter referred to as National, sold and conveyed to plaintiff the described lot in the town of Leadville (now Desloge), St. Francois County, "except the surface rights," and that, thereafter, on January 31, 1938, National conveyed the surface rights in said lot to defendant and two others by a quitclaim deed which contained the following provision: "The grantees, their respective heirs, legal representatives and assigns are forever prohibited from using said premises, or any part thereof, or any building thereupon for a dramshop or place of any kind for the manufacture, storage or sale of any kind of intoxicating liquor, or for any livery stable, bawdy house, slaughter house or dairy, or for any illegal or disorderly purpose, . . . any violation in any way of these provisions shall render this conveyance null and void and shall cause the title to the premises hereby conveyed to immediately revert in the grantor, and its successors, with the right to re-enter without notice and without legal process and take possession of said premises, free and discharged of any interest of the parties of the second part, their respective heirs, legal representatives or assigns, therein."

It was further alleged that defendant acquired the interest of his co-grantees; that he violated the provisions of the deed against the sale of intoxicating liquors; that title was forfeited to National; that notice of forfeiture was given and a re-entry made; that, thereafter, on June 2, 1939, National sold and conveyed to plaintiff; and that by reason of National's conveyances to plaintiff, plaintiff was the true and rightful owner of the described real estate. Plaintiff asked for a judgment that plaintiff was the owner and entitled to possession.

The original defendant died after the institution of the suit and his sole and only heir at law (his brother and business partner, hereinafter referred to as defendant) was substituted as defendant. The answer, cross action and counterclaim of the substituted defendant admitted that the defendant claimed an interest in the described real estate, alleged that defendant owned the surface rights in the described premises, denied generally each and every other allegation, and alleged

certain facts, from which it appears that the chief facts alleged in the petition are admitted. Defendant alleged that on November 1, 1910, the St. Louis Smelting and Refining Company was the owner of the described premises and leased said premises to Oscar Florence for a 20 year term; that, thereafter, on December 31, 1917, the St. Louis Smelting and Refining Company conveyed its right, title and interest in the premises to National; that, at the expiration of the 20 year lease, National did not repossess the property; that on January 31, 1938, National executed the quitclaim deed, supra, to the original defendant and his co-grantees; that said original defendant acquired the interest of his co-grantees; that defendant claims by, through and under said original defendant, his co-grantees, and said quitclaim deed; that said original defendant obtained liquor licenses from proper authorities, and during the year 1938 "sold intoxicating liquors in packages on said premises"; and that the alleged deeds of July 1, 1936 and June 2, 1939 were executed by National to plaintiff.

Defendant, however, set up a number of affirmative defenses and grounds to support his claim of title, as follows: (1) that National was estopped to assert a forfeiture, because it permitted the sale of intoxicating liquor in packages on the premises under a prior lease having the same provisions and because National's officers indicated in 1933 that it would not interpret similar provisions of prior leases and deeds as prohibiting such sales; (2) that National waived the provisions of the deed by not attempting to enforce similar provisions of prior leases and deeds, executed in prior years, and after knowledge of violations; and (3) that National, having sold substantially all of its real estate to plaintiff in 1936 without such provisions, lost the right to enforce by forfeiture the provisions of the subsequent deed of 1938.

In the trial of the cause it was admitted that it had long been the established policy of the St. Louis Smelting and Refining Company, the National and the plaintiff, in every conveyance to individuals, whether by lease or deed, to insert the same or similar restrictions against the sale of intoxicating liquor. It was further expressly admitted that, at the time of the service of notice of forfeiture and prior thereto, the original defendant and the defendant were engaged (at their drug store on said premises) in the sale of intoxicating liquor in the original package under a permit from the Liquor Control Department of Missouri.

The deed from National to plaintiff, dated July 1, 1936, covered approximately 2000 acres of land in St. Francois County and 900 lots, including those in Leadville (Desloge), and all of National's property in said county, except the surface rights in certain small parcels of land (such as the premises here) and certain easements and leases. National's original deed of January 31, 1938, conveying surface rights only to the original defendant and his co-grantees, was in

evidence, and it contained the restrictions set out, supra. The habendum clause further included the words "except as herein restricted, reserved and limited." There was evidence that National's officers had refused to execute this deed in a form excluding the restrictions, and that the restrictions were placed in the deed pursuant to an agreement entered into between representatives of National and the plaintiff, when the surface rights in the particular lot were excluded from National's deed to plaintiff on July 1, 1936. Both defendant and the original defendant had full knowledge of the terms, conditions and restrictions contained in the deed of January 31, 1938, before it was accepted and recorded.

In 1939, National, by its president and from its New York office, authorized one of its agents, who was in charge of real estate at Bonne Terre, to serve upon the original defendant and the substituted defendant a written notice of forfeiture and a request for possession of the described premises. The notice advised that forfeiture of title had been declared on account of the storing, selling and keeping for sale, on the described premises, of intoxicating liquors in the original package; and that re-entry was made by National's authorized agent. National's agent went upon the premises and served the notice and the request for possession on May 29, 1939, but the premises were not surrendered.

The deed from National to plaintiff, dated June 2, 1939, recited that National had previously conveyed surface rights in the described premises to the original defendant and his co-grantees, subject to the terms, conditions and provisions of said conveyance, and it conveyed to plaintiff "all of the . . . present rights, title, interests and remedies of said party of the first part . . . arising out of said restrictions, reservations, exceptions and reversionary rights, including particularly those which exist consequent upon the fact that the party of the first part has given notice of forfeiture for alleged breach of said restrictions upon the use of said premises, and has re-entered pursuant to such forfeiture."

Appellant assigns error on the entry of judgment for plaintiff and contends that the petition does not state facts sufficient to entitle the plaintiff to the relief asked because it discloses that plaintiff was not in possession of the premises at the time the petition was filed. Appellant's theory is that plaintiff's action is in equity to remove a cloud on plaintiff's title; that plaintiff claims a legal title and is out of possession; and that his legal remedy is entirely adequate. Turner v. Hunter, 225 Mo. 71, 82, 123 S. W. 1097. Appellant points to the allegation of the petition, to wit, "That as a result thereof (violation of restrictions), he (the original defendant) and those claiming through or under him, forfeited to National . . . all rights, title and interest in said property, and his deed became, and is, null and void"; and appellant contends that the object and purpose

240

of plaintiff's petition is to cancel and set aside National's deed to the original defendant; and that plaintiff has erroneously sought the aid of a court of equity in the enforcement of a forfeiture. Moberly v. City of Trenton, 181 Mo. 637, 645, 81 S. W. 169.

 The action is under Sec. 1684, R. S. 1939, Mo. R. S. A., sec. 1684, and is a statutory action. Whether it is at law or in equity depends upon the facts stated and the relief asked. Baker v. Lamar (Mo. Sup.), 140 S. W. (2d) 31, 34. Relief under the statute is expressly authorized whether the claimant is in possession or not. Sec. 1684, supra. The petition states no facts which would make a cause of action in equity and plaintiff has asked no affirmative equitable relief. Plaintiff does not seek to have the deed from National to the original defendant set aside or cancelled, but rather to establish the fact of forfeiture for violations of terms, the re-entry by the grantor, the transfer to plaintiff, and plaintiff's ownership and right to possession. National is the common source of title. The pleaded steps in plaintiff's chain of title are (1) the conveyance by National to the original defendant and others, subject to the conditions mentioned; (2) the forfeiture for breach; (3) the re-entry by National; and (4) the conveyance to plaintiff. The petition seeks only the determination of legal rights (the existing title) under the facts stated. Koehler v. Rowland, 275 Mo. 573, 205 S. W. 217, 218. Whether the proceeding was for trial at law or in equity, of course, depended upon the issues tendered by the pleadings and, in this case, whether the answer of defendant set forth an affirmative defense in equity and asked for affirmative equitable relief. Kimberlin v. Roberts, 341 Mo. 267, 107 S. W. (2d) 24; Richards v. Earls, 345 Mo. 260, 133 S. W. (2d) 381, 384. While the answer did not by designation expressly purport to contain "a cross petition," it attempted to state facts to make out a cause of action in equity and, after a statement of the facts upon which defendant based his claim of ownership, it asked for certain affirmative equitable relief to wit, (1) the cancellation of plaintiff's title deed to surface rights; (2) the removal of same as a cloud on defendant's title and (3) the quieting of the title in defendant. If defendant was entitled to the affirmative equitable relief requested, plaintiff could not recover on the cause of action stated in its petition, and the proceeding was for the determination of a court of equity. Ebbs v. Neff, 325 Mo. 1182, 30 S. W. (2d) 616, 620. The evidence in support of the several allegations of the petition, answer, cross petition and counterclaim was submitted to the court in one hearing, as a proceeding in equity, and we will review it on the same theory.

 Appellant next contends that "the package sales (of intoxicating liquors) not for consumption on the premises were not a breach of the condition against the sales of intoxicating liquors on the premises." Appellant in effect concedes that the provision of the deed

created a condition subsequent (Koehler v. Rowland, supra), but contends that "conditions subsequent are not favored in the law and are construed strictly, because they tend to destroy estates"; and that "forfeitures are not favored and all conditions or provisions in contracts providing for them must be strictly construed." Robinson v. Cannon, 346 Mo. 1126, 1132, 145 S. W. (2d) 146, 149, and cases there cited.

Neither the provisions of the deed of January 31, 1938, nor the facts with reference to the sale of intoxicating liquors, are in dispute. The deed provided: "The grantees . . . are forever prohibited from using said premises, or any part thereof, or any building thereupon for a dramshop or place of any kind for the manufacture, storage or sale of any kind of intoxicating liquor . . ." A reversion was provided for in case of "any violation in any way of these provisions." Defendant pleaded and the proof shows that National obtained quitclaim deeds from outside interests and was fully authorized to make the deed of January 31, 1938; and that defendant now claims under said deed, which was accepted with a full knowledge of its provisions and was duly recorded on February 25, 1938. When the notice of forfeiture of title was served on May 29, 1939, there was a large supply of whiskey stored on the premises in the drug store operated by defendant and his brother and it was expressly admitted that, at the time of the service of the notice and prior thereto, this defendant and the original defendant were engaged in the sale of intoxicating liquor in their said drug store in the original package, under permit from the Liquor Control Department of Missouri and were "making sales regularly."

It is appellant's theory that in view of the inclusion of the word "dramshop" in the provisions of the deed, the provisions were only intended to prohibit "sales for consumption on the premises" and that, ▆▆▆ considered literally, the provisions, as written, would lead to absurd results, even to prohibiting the keeping of alcohol in the drug store, to compound prescriptions. We think the provisions of the deed, as applicable to the business in which defendant and his brother were admittedly engaged, are plain and unambiguous. The intention of the parties was clearly determinable from the language used. Such intention was to prohibit the use of the premises for the manufacture, storage or sale of any kind of intoxicating liquors, whether for consumption on the premises or not. Hickey v. Greengard (Mo. App.), 176 S. W. (2d) 661, 663. Upon the admitted facts, the plain provisions of the deed were being violated, when the notice of forfeiture was served and re-entry was made. National was entitled to declare such forfeiture and re-enter the premises, unless prevented on other grounds.

▆▆ It is argued that the evidence shows that National "interpreted the provisions against the sales of intoxicating liquors as mean-

ing that sales in packages under licenses and not to be drunk on the premises" were not forbidden; and that "the language of the general prohibition in the conveyance does not exhibit the real transaction." Defendant testified that he had been selling intoxicating liquor in packages in Desloge, on the described premises, since 1926; on prescription, until the repeal of prohibition, and since then with or without prescription. At the time National acquired the property in 1917, it was under a 20-year lease to Oscar Florence, dated about November 1, 1910. The lease was not in evidence, but defendant offered to admit, and it was apparently conceded, that, in every lease executed by the St. Louis Smelting and Refining Company, a provision was inserted against the sale of intoxicating liquor on the premises. There was no evidence, however, that National ever gave Florence or his heirs a lease on the premises. The evidence is that National did not repossess the premises after the *expiration* of the 20-year lease, which expired in 1930. There was no showing that National was authorized to declare a forfeiture on account of the sale of intoxicating liquors on the premises. Defendant testified that for 9 years he and his brother had been trying to get a deed from National, and defendant's counsel stated that "after the expiration of the lease" National let it run on and that, when the deed of 1938 was executed, National, for a sum, "enough to take up the back rent, conveyed this property" by the deed of January 31, 1938. The deed was executed, delivered and accepted. Its provisions are plain and unambiguous. The grantor's interpretation, if any, of its provisions subsequent to its execution, or the interpretation of similar terms of other instruments prior to its execution, would not be controlling. Keller v. Keller, 343 Mo. 815, 123 S. W. (2d) 113, 117; Meissner v. Standard Ry. Equipment Co., 211 Mo. 112, 133, 109 S. W. 730, 735; Hickey v. Greengard, supra. The intention of the parties must be determined from the language used in the deed where the intention is clearly expressed. Appellant's contention is overruled.

Appellant next contends that National promised defendant and his brother that there would be no forfeiture for sales of intoxicating liquor on the premises in packages; that they acted and relied on the promises so made; and that National was estopped to assert a forfeiture of the title to the described premises. Over plaintiff's objection, the defendant was permitted to show that, long prior to the execution of the deed of January 31, 1938, the defendant and his brother were operating a drug store on the premises as tenants of the Florence heirs and, in 1933 about the time of the repeal of prohibition, after National had closed down and quit business, defendant called National's land agent and asked what the attitude of National would be on the sale of liquor in packages; that he was advised that National was not going to do anything about the sale of liquor; that defendant inquired of National's attorney at Farmington and was ad-

vised that National was "not going to do anything about enforcing (sic) the sale of liquor"; that the attorney said, "We are through, that law was put in the deed about 35 years ago and this is 1933"; that about 1933 the defendant advised National's manager in St. Louis that, if prohibition was repealed, he expected to get a license and handle liquor in packages, and was advised that "he (the manager) didn't care what he handled, (and) that they would take no action at all." There was evidence that National's manager exhibited an attitude of "no interest," and that the original defendant was fully advised as to the conversations with National's agents. There was further evidence, ▆▆▆ also admitted over objection, that in 1936, National's manager told W. L. Bouchard "the policy of the National would not be to enforce the restrictions as to liquor; and that the original defendant advised defendant that, if it hadn't been for his understanding that National would do nothing about the restrictions, "he would not have purchased the building when he bought it from the National and the Robertsons." Appellant insists that the foregoing facts present every element of estoppel and that National was estopped to assert a forfeiture of title under the terms of the deed subsequently executed. All conversations shown in evidence, except the last one mentioned, supra, took place long prior to the execution of the deed dated January 31, 1938. Said deed was not then in contemplation of the parties and neither the defendant nor the original defendant were in possession of the described premises under any lease or deed from National containing any restrictions against the sale of intoxicating liquors. Defendant was then a tenant of the Florence heirs, who had remained in possession after the lapse of the 20-year lease of 1910 from the St. Louis Smelting and Refining Company. The mere fact that defendant was advised that National did not then contemplate any action against those who might be holding under leases or deeds containing restrictions against the sale of intoxicating liquor, could not estop National from the enforcement of the restrictive provisions of a deed subsequently executed by National and delivered to and accepted by the grantees with full knowledge of its provisions. No change of National's position, since the execution of the deed and to defendant's damage, is here involved so as to be the basis for estoppel. Waugh v. Williams, 342 Mo. 903, 119 S. W. (2d) 223, 226; State ex inf. Shartel ex rel. City of Sikeston v. Missouri Utilities Co., 331 Mo. 337, 53 S. W. (2d) 394, 399. Nor could the defendant rely upon National's not doing something which the parties subsequently agreed (by the execution, delivery and acceptance of the deed) that National could legally do. One cannot defeat the enforcement of a provision of a deed or contract by a mere showing that the other party misrepresented its legal effect or gave assurances that the same would not be binding or enforced. MacLeod v. Skiles, 81 Mo. 595, 604; Deming Inv. Co. v. Wasson (Mo. App.), 192 S. W.

764, 765; Betts v. Harvey (Mo. App.), 297 S. W. 995; 14 Am. Jur. Covenants, Conditions and Restrictions, Sec. 349, p. 671.

Appellant next contends that, "by its failure to enforce forfeiture of titles to lands conveyed by it when it knew that the condition against sales of intoxicating liquors, in conveyances made by it, had been violated, the National Lead Company waived any right it may have ever had to assert a forfeiture to the title to the premises in suit." While it is admitted that National "in every conveyance it ever made to individuals, whether in the form of a lease or . . . deed, inserted a restriction against the sale of intoxicating liquor on the premises," there is no evidence of it having actually executed any such deeds or leases to any individuals, except the deed of January 21, 1938, but we assume that it did so, particularly in view of certain evidence in the record and certain references to property occupied by its tenants. However, the property in question was acquired by National, subject to a lease of the St. Louis Smelting and Refining Company, dated November, 1910, which is alleged to have contained a similar provision. The evidence upon which appellant relies, is that, in 1937 and 1938, one George Morris operated a beer joint and sold 5% beer in Desloge, until he quit on notice from the plaintiff; that one Bryan and wife sold liquor on prescription and in packages on property of National, until stopped by the attorney for plaintiff; that both the superintendent and general manager of National knew that defendant was selling liquor on the premises in question, as set out supra; that one Florence sold liquor on the premises and was convicted of selling liquor in 1916, in violation of local option laws; that in 1904-1906 Florence, a druggist, would ship in barrels of whiskey; that one Black was convicted for selling liquor in the same block in Desloge in 1923; that one Brensick sold liquor at his place ¼ mile from the premises here in question in 1922; that there was newspaper publicity about the Black and Florence convictions; that National's manager was a subscriber to the local paper; that the violation of restrictions against liquor was a matter of common knowledge; and that there were no forfeitures. Appellant relies on Robinson v. Cannon, supra, and other cases, which are not applicable under the facts here.

It will be noted that there was no evidence that any of these sales of intoxicating liquors were on lands of National, which were subject to restrictions in deeds or leases executed by National, except as to sales by defendant and his brother on the described premises after 1938 and prior to the alleged notice of forfeiture. But if we assume that there were such sales in violation of restrictions, and on lands leased or sold by National, and that National knew thereof and did not seek a forfeiture, it cannot aid defendant here or constitute a waiver of National's rights to insist upon a forfeiture for violation of the provisions of the deed of January 31, 1938, because National

had no rights under the said deed to waive prior to the execution and delivery of the deed. Eurengy v. Equitable Realty Corporation, 341 Mo. 341, 351, 107 S. W. (2d) 68.

Appellant next contends that the sale, on July 1, 1936, by National to plaintiff of nearly all of its land in St. Francois County, without imposing any restrictions or conditions in said deed on the use of the land so sold, "had the effect of extinguishing the condition against the sale of intoxicating liquors in the deed" of January 31, 1938. We have noted that it appears that National and plaintiff have long followed the same policy with reference to restrictions against the sale of intoxicating liquors in deeds or leases to individuals; that the deed of July 1, 1936 from National to plaintiff contained no such provisions, as were always placed in leases or deeds to individuals; and that, when the deed of January 31, 1938 was executed by National to the original defendant and his co-grantees, the restrictions were placed therein in compliance with an agreement between plaintiff and National, entered into when the surface rights in the described premises were omitted from the deed of July 1, 1936. The sole question, therefore, is whether National had the right to sell the surface rights in the described premises to the original defendant and his co-grantees, subject to said restrictions, if the grantees were willing to accept the deed containing them. No authorities are cited to the contrary. Appellant relies on cases where a grantor has subsequently rendered it impossible to accomplish the purpose sought to be accomplished by restrictions in a prior deed and cases where the subsequent acts of a grantor in dealing with adjacent or surrounding property evidences a waiver of the conditions in the prior deed. The conditions set forth in the deed of January 31, 1938, executed subsequent to the deed of July 1, 1936 ·were not waived or extinguished by reason of the fact that the prior deed of National to plaintiff did not contain such conditions.

Appellant next contends that "plaintiff having only a quitclaim deed to the premises from National . . . is not a bona fide purchaser . . . and is barred and estopped from asserting title." No question of "bona fide purchaser" is involved in this case. Plaintiff claims only the rights acquired under the quitclaim deed from National after forfeiture and re-entry. It claims no rights that National did not possess when the deed of June 2, 1939 was executed. If National acquired no title to surface rights by forfeiture and re-entry, the plaintiff has none. The contention is overruled.

Appellant assigns error on the court's exclusion from evidence of a letter sent by him by registered mail to National's president on June 5, 1939. The letter, written after the service of notice of forfeiture, the re-entry and the sale of the premises by National to plaintiff, sets out much of defendant's theory and evidence as presented at the trial of this cause. The letter closed as follows: "Premises con-

sidered, would it not be possible for me to have a permit for the sale of liquor in packages or to let things go on as they have in the past. Soliciting your earliest reply.'' National's president did not reply to the letter and defendant offered the letter in evidence for the stated purpose of showing that defendant had talked to National's said agents and manager and (in view of no reply or denial of matters therein stated) as ''a ratification and admission that those men had done what they were authorized and entitled to do.'' It is now urged the letter was admissible ''as evidence of an admission by acquiescence in the promises and statements'' of National's agents. The evidence was properly excluded as hearsay and incompetent. Ely v. Kobermann (Mo. App.), 35 S. W. (2d) 953, 955. No duty rested upon National's president to reply to the letter and request, and silence in view of the content of the letter and surrounding circumstances was not an implied admission that defendant had talked to National's agents or that National acquiesced in what the agents had stated. See, 20 Am. Jur. Evidence, Sec. 568, p. 481. It further appears from the conceded facts that prior to the time the letter was written or National failed to reply thereto, National had parted with all right, title or interest in the described premises by deed dated June 2nd and recorded June 7, 1939. Defendant and his brother were in possession, and whatever title National had acquired by the forfeiture had passed to plaintiff. Any admissions by National against plaintiff's title (by silence or otherwise) were, therefore, inadmissible against the plaintiff. Enders v. Richards, 33 Mo. 598, 602; Whitely v. Babcock (Mo. Sup.), 202 S. W. 1091, 1105; 31 C. J. S. Evidence, sec. 323, p. 1101.

Appellant next contends that, ''this action being a suit in equity, title to the premises cannot be declared to be in the plaintiff for the reason that, under the petition, in order to render such a decree the court would have to enforce a forfeiture and give aid in divesting of an estate for an alleged breach of a covenant on a subsequent condition, and a court of equity never enforces a forfeiture, or aids in divesting an estate for breach of a covenant on a condition subsequent.'' We have heretofore held that the petition states a cause of action at law, but the facts stated and the prayer for affirmative equitable relief in the answer and cross petition made the proceeding one in equity. It appears further that the affirmative matters upon which defendant based his claim of ownership and right to the relief asked have been ruled against him and, accordingly, defendant was not entitled to the affirmative equitable relief prayed in his answer and cross petition. The cause was then for disposition on plaintiff's petition and, in view of the conceded facts, the finding thereon was properly for plaintiff.

We must now consider the counterclaim for improvements placed upon the premises. Error is assigned on the finding for plain-

tiff thereon. Appellant contends that, if plaintiff was entitled to judgment for title.and possession, defendant was entitled to "a decree for the value of the improvements placed on the premises by the Florence heirs," as improvements made in good faith by his predecessors in title. Appellant cites Secs. 1684 and 1548, R. S. 1939, and Gallenkamp v. Westmeyer, 116 Mo. App. 680, 687, 93 S. W. 816. The authorities do not aid appellant. It is admitted that the improvements were constructed by the lessee in 1916, while the property was under 20-year lease from the St. Louis Smelting and Refining Company. There is no evidence of any adverse claim asserted by the lessee or his heirs and no evidence that improvements were made in good faith under claim of title. Subsequent to the improvements and prior to the delivery of the deed of January 31, 1938, it is admitted that National obtained quitclaim deeds from the heirs and others "in order that there might be no question of" National's right to deed to the original defendant and his co-grantees. Defendant claims under the original defendant. The finding for plaintiff on defendant's counterclaim was proper. Gray v. Clements, 296 Mo. 497, 246 S. W. 940, 944.

Other errors assigned are not material, in view of the conclusions reached, and need not be considered.

The judgment is affirmed. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.