Mansfield C. BAY and Maude H. Bay, his Wife, Plaintiffs-Appellants,

v.

STOUT SIGN COMPANY, a Corporation, Defendant-Respondent.

No. 45173.

Supreme Court of Missouri, Division No. 1.

April 8, 1957.

Rehearing Denied May 13, 1957.

Arnold Just, St. Louis, for appellants.

Rassieur & Thyson, George M. Rassieur, Thomas Bond, J. J. Thyson, St. Louis, for respondent.

HYDE, Judge.

Action to ascertain and determine title to a strip of land 40 feet wide in St. Louis County, claimed by plaintiffs. Defendant asked adjudication of fee simple title in it, which the court made in its judgment,

and plaintiffs have appealed. Title to real estate clearly is involved.

The decisive question is whether or not this 40 foot strip was conveyed by plaintiffs to defendant's predecessor in title by being included in the description in their warranty deed dated April 17, 1937. That description was as follows: "A portion of Lot Eleven (11) of the Subdivision of the Jennings Estate in United States Survey Nineteen Hundred and Thirteen (1913), Township Forty-Six (46) Range Seven (7) East; bounded South by Florissant Avenue, West by a line Thirty (30) feet East of the West line of said Lot Eleven (11), North by the Wabash Railroad Company Right of Way, or a private street known as 'Gladys Avenue' and on the East by the City Limits Line of the City of St. Louis." Defendant got title from a subsequent grantee by a deed dated December 18, 1944, which contained a description adequate to convey the 40 foot strip if it had title to it. The 40 foot strip herein involved is the land in Gladys Avenue south of and adjoining the Wabash Railroad Right of Way. Thus defendant claims its north line is the Wabash Right of Way, while plaintiffs claim defendant's north line is Gladys Avenue and claim they own the land covered by Gladys Avenue subject to the easement for street purposes.

Plaintiff, Mansfield C. Bay, originally got title in 1921, receiving three deeds all dated May 11, 1921, as follows:

1—Warranty deed of Johanna Lowes, described as widow and devisee in her husband's will, containing the following description: "A portion of lot eleven (11) of the Subdivision of the Jennings Estate in United States Survey nineteen hundred and thirteen (1913) Township Forty-six (46) Range seven (7) East; bounded East by Goodfellow Avenue; South by Florissant Avenue; West by a line Thirty (30) feet East of the West line of said lot eleven (11); North by the Wabash Railroad Company Right of Way or private street known as Gladys Avenue, containing twelve and two hundred and seventy thousandths (12.270) acres, more or less."

2—A quitclaim deed signed by William Lowes, Mary Lowes and William Erwin Lowes, containing the same description as the warranty deed.

3—A quitclaim deed signed by all of those who signed the other two deeds, containing the following description: "A strip or parcel of ground forty (40) feet in width from North to South, bounded North by the Right of Way of the Wabash Railroad Company; East by Goodfellow Avenue; South by a line parallel to and distant forty (40) feet South of the South line of the Right of Way of the Wabash Railroad Company and West by a line thirty (30) feet East of the West line of said lot eleven (11) of the Subdivision of James Jennings Estate in United States Survey 1913."

A part of the land described in these three deeds was in the City of St. Louis but that part was sold to other parties and is not involved in this case. In 1924, by warranty deed dated February 11, 1924, plaintiffs conveyed the land to Bay Brothers Lumber Company, a corporation, using the same description as that in the warranty deed from Johanna Lowes. Plaintiffs later executed a quitclaim deed to Bay Brothers Lumber Company, dated December 7, 1925, using the same description as in their previous 1924 warranty deed; and on the same date executed a quitclaim deed to Bay Brothers Lumber Company describing the 40 foot strip exactly as it was described in the quitclaim deed from the Lowes dated May 11, 1921. Thereafter, Bay Brothers Lumber Company conveyed to plaintiffs the part of the land in St. Louis County by warranty deed, dated January 2, 1935, using the same description of the northern boundary as the previous deeds ("bounded * * north by the Wabash Railroad Company Right of Way, or a private street known as 'Gladys Avenue' "); but never made a separate conveyance of the 40 foot strip as had been done in the two previous transactions. Plaintiffs conveyed to defendant's

predecessor in title using the same description in their deed of April 17, 1937, as hereinabove stated. In 1944, land was conveyed to defendant by Continental Can Company which obtained title from plaintiffs' grantee, using a description clearly intended to convey any interest it had in the street. ("Together with all the rights, titles and interest, if any, of the party of the first part in and to any strips, gores or parcels of land adjoining the above described premises, and in and to the land lying in any street abutting or adjoining the above described premises.") In 1951, plaintiffs, as last president and last survivor of the Board of Directors of Bay Brothers Lumber Company executed a quitclaim deed, dated May 15, 1951, conveying to themselves the 40 foot strip by the same description as that used in the previous quitclaim deeds.

Plaintiffs say: "It is well settled that the cardinal rule in interpretation of a deed is that the intention of the grantor governs. That rule applies to a determination of the boundaries of a tract conveyed as well as to any other portion of the deed. It is our earnest contention that the record here presented shows that Mr. Bay owned two tracts, that is, one bounded on the north by Gladys Avenue, and two, Gladys Avenue itself, and that he conveyed only the first mentioned tract, still owning the second tract subject to such easement as exists for a street. Respondent's contention, which was successful below, that a conveyance bounded upon a street passes the fee to the land in the street, fails here because of the clear evidence of a contrary intention." Plaintiffs cite Korneman v. Davis, 281 Mo. 234, 219 S.W. 904, loc. cit. 907; Eckle v. Ryland, 256 Mo. 424, 165 S.W. 1035; McAlister v. Pritchard, 287 Mo. 494, 230 S.W. 66; Inlow v. Herren, 306 Mo. 42, 267 S.W. 893; Monroe v. Lyons, 339 Mo. 515, 98 S.W.2d 544; Ott v. Pickard, 361 Mo. 823, 237 S.W.2d 109. The evidence of contrary intention is claimed to be the previous separate deeds, the statement as to acreage in the Lowes' deeds, and the fact that defendant got a quitclaim deed to the 40 foot

strip from the Continental Can Company (which had never received such a separate deed from anyone) about three months after receiving its warranty deed.

 It is true, as held in Eckle v. Ryland, supra, that in the construction of a deed the intention of the grantor is the main thing, and all other rules are mere aids. It is also true, as said in Korneman v. Davis, supra [281 Mo. 234, 219 S.W. 907], "that, in construing a deed, all the words of the deed within its four corners must be considered together and given effect, and that words stating the estimated quantity or area are part of the description of the land, and must be so considered in fixing the identity of the tract conveyed." The other cases cited by plaintiffs restate these rules of construction. Nevertheless, intention must be determined by what the deed actually says and not by what the grantor intended secretly or without stating or by what he might have said if he had decided to further explain his intentions. See Gardner v. Vanlandingham, 334 Mo. 1054, 69 S.W.2d 947, 949; Rummerfield v. Mason, 352 Mo. 865, 179 S.W.2d 732, 733; St. Joseph Lead Co. v. Fuhrmeister, 353 Mo. 232, 182 S.W.2d 273, 278; White v. Meadow Park Land Co., 240 Mo. App. 683, 213 S.W.2d 123, 126. While a survey in evidence, made in May 1921, shows the tract to be in two sections of 6.135 acres each, and had different markings to indicate 0.985 acres in Gladys Avenue, there was no reference to this plat in the deed. (The plat had similar figures of a different character from the 6.135 acre figures apparently indicating there was 4.96 acres in the City of St. Louis and 7.31 acres in St. Louis County.) However, even if the 12.270 acres did not include the street area that would not be controlling over the designation in the deed of the Wabash Right of Way as the north boundary. As said in Van Winkle v. Van Winkle, 184 N.Y. 193, 77 N.E. 33, 35, that "where a survey gives the dimensions and quantity of the land conveyed exclusive of the public way, it does not operate to destroy the pre-

sumption that the fee to the roadbed was conveyed; for the reason that such dimensions and quantity of the usable land is ordinarily deemed by the purchaser of paramount importance in determining its availability for the uses designed by him." See also Boothe v. McLean, Tex.App., 267 S.W.2d 158, 166. In any event, looking to see what plaintiffs' warranty deed actually says we find (as did all of the other warranty deeds in the chain of title of defendant's grantor) it states the tract is "bounded * * * north by the Wabash Railroad Company Right of Way, or a private street known as 'Gladys Avenue'." We think this means that Gladys Avenue is the effective north boundary of the land so long as it is used as a street but that the actual north boundary is the Wabash Right of Way. Certainly the Wabash Right of Way is very definitely stated to be the north boundary but that description of the boundary is then qualified by the reference to Gladys Avenue. Therefore, it is our conclusion that the reasonable construction of this description is that it designated the Wabash Right of Way as the north boundary subject to the street easement of Gladys Avenue and conveyed plaintiffs' title to the land in this street.

This construction is in accord with our previous decisions which have held that stronger provisions (indicating limitations to a street boundary) than the one in this case not only did not deprive the owners of land abutting on a street from ownership of the land upon which the street was located but also failed to prevent them from having ownership rights in a railroad right of way on the other side of the street. State ex rel. State Highway Commission v. Jacob, 362 Mo. 781, 244 S.W.2d 7; State ex rel. State Highway Commission v. Jacob, Mo. Sup., 260 S.W.2d 22. Each of these cases involved lots in St. Louis County abutting on a street, on the other side of which was an abandoned railroad right of way. In the first Jacob case, 244 S.W.2d loc. cit. 8, the plat of the lots contained the following reservation: "The title to the above men-

tioned streets is hereby reserved in the undersigned, privilege, however, being granted lot owners in said subdivision to use the same for their intended purpose." However, we held this reserved only an easement and that the deeds, from the company which had platted the land (the deeds being made with reference to it), conveyed the fee in the land occupied by the street and, therefore, its grantees as owners of land adjacent and contiguous to the railroad right of way became the owners thereof in fee when abandoned by the railroad. We held the company which had platted the lots had no title to the street and, therefore, had no interest in the abandoned right of way; but that its grantees, the abutting lot owners on St. Charles Lane, were entitled to the awards made in the condemnation of the abandoned right of way by the State Highway Commission.

The second Jacob case involved the title of other lot owners, grantees of another company, in the same abandoned right of way. In that case the heirs of the grantor of the subdividing company claimed under a clause in the deed to the railroad, 260 S.W.2d loc. cit. 23, providing in the event of "abandonment of said enterprise by the grantee herein or his successors and assigns that the privileges herein and the property hereby conveyed shall revert to and be fully vested in the grantors their legal representatives or assigns." We held the right of way deed conveyed only an easement and said the Home Heights Company, which platted the lots, acquired the fee to the entire tract, subject to the easement, by a later conveyance from the same grantor, not mentioning the right of way. We further said: "The law in this state is that when Home Heights Company conveyed the lots north of St. Charles Avenue to the several purchasers, it being the owner of the fee upon which the avenue lay, its deeds also conveyed the fee to St. Charles Avenue, subject to the easement for street purposes. Eureka Real Estate & Inv. Co. v. Southern Real Estate & Fin. Co., 355 Mo. 1199, 200 S.W.2d 328, and cases therein

cited. And the lot owners, having thus acquired .from Home Heights Company the fee to the land occupied by St. Charles Avenue, by operation of law became the owners in fee of the right of way strip which abutted St. Charles Avenue. In other words, the deeds from Home Heights Company to the lot owners on the north of both the right of way strip and St. Charles Avenue also conveyed title in fee to both the strip and the avenue, subject to the respective easements in each; and upon abandonment of the strip for railroad purposes, the fee, then resting in the lot owners, was freed of the serviency of the easement." See also 8 Am.Jur. 772–781, Secs. 36–48; Annotations 2 A.L.R. 6; 47 A.L.R. 1276; 123 A.L.R. 542; 11 C.J.S., Boundaries, § 35, p. 580. We hold that the court correctly adjudged that defendant's land was "bounded * * * on the north by the south line of the right of way of the Wabash Railroad Company"; and that plaintiffs have no right, title or interest in the 40 foot strip of land known as Gladys Avenue.

The judgment is affirmed.

All concur.